# In the United States Court of Federal Claims

**Nos. 16-865L, 16-893L**
**Filed: June 1, 2018**

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| ANDREW S. LUCIER, <u>et al.</u>, | \* |
| THOMAS E. BEATTIE, <u>et al.</u>, | \* |
|  | \* |
| Plaintiffs, | \* |
| v. | \* |
|  | \* |
| UNITED STATES, | \* |
|  | \* |
| Defendant. | \* |

**Cross-Motion for Partial Summary Judgment; Fifth Amendment Taking; Rails to Trails; Prescriptive Easement; Fee Simple Interest; Easement; Deed Interpretation; Plat Interpretation**

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**John R. Sears**, Baker Sterchi Cowden and Rice, LLC, St. Louis, MO, for plaintiffs in <u>Lucier et al. v. United States</u>, Case No. 16-865L. Of counsel was Jacqueline D. Gebhardt, Baker Sterchi Cowden and Rice, LLC, St. Louis, MO.

**Thomas S. Stewart**, Stewart, Wald & McCulley, LLC, St. Louis, MO, for plaintiffs in <u>Beattie v. United States</u>, Case No. 16-893L. Of counsel were Steven M. Wald and Michael J. Smith, Stewart, Wald & McCulley, LLC, St. Louis, MO, and Elizabeth G. McCulley, Stewart, Wald & McCulley, LLC, Kansas City, MO.

**Sarah Izfar**, Trial Attorney, Natural Resources Section, Environmental and Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With her was Jeffrey H. Wood, Acting Assistant Attorney General, Environment and Natural Resources Division.

# O P I N I O N

## <u>HORN, J.</u>

In the above-captioned cases, plaintiffs are landowners in Thurston County, Washington, who allege that the United States government effected takings of their reversionary property interests through the operation of the National Trails System Act, 16 U.S.C. § 1241 et eq. (2012) (the Trails Act). Plaintiffs allege a taking occurred when the United States Surface Transportation Board (STB) issued a Notice of Interim Trail Use (NITU) related to a railroad corridor abutting plaintiffs' property that prevented plaintiffs' state-law property rights from reverting to and vesting in plaintiffs. As a result of the government's alleged taking of plaintiffs' reversionary property interests, plaintiffs assert they are entitled to just compensation under the Fifth Amendment to the United States Constitution.

Although the plaintiffs in both cases assert claims relating to the same railroad corridor in the State of Washington, plaintiffs filed their takings claims in the United States Court of Federal Claims separately and are represented by two separate counsels of record. The two cases are captioned as <u>Andrew S. Lucier, et al. v. United States</u>, No. 16-865 (<u>Lucier</u>),[1] and <u>Thomas E. Beattie, et al. v. United States</u>, No. 16-893 (<u>Beattie</u>).[2]  On January 11, 2017, the court, finding the factual and legal issues in the two cases to be substantially similar, consolidated the above-captioned cases for case management purposes.

## FINDINGS OF FACT

The BNSF Railway Company (BNSF) previously operated a railroad corridor that extended, in relevant part, approximately 1.43 miles through Belmore, Thurston County, Washington. Plaintiffs are landowners in Thurston County, Washington.

As discussed in greater detail below, the railroad corridor appears to have been constructed during the 1890s. In 1970, the Northern Pacific Railway Company merged with the Great Northern Railway Company and the Chicago Burlington and Quincy Railroad Company and became the Burlington Northern Railroad Company. In 1996, the Burlington Northern Railroad Company merged with the Atchison, Topeka and Santa Fe Railway Company to become the Burlington Northern and Santa Fe Railway Company. In 2005, the Burlington Northern and Santa Fe Railway Company was renamed as the BNSF Railway Company, which remains BNSF's current name today.

On April 21, 2016, BNSF filed a Notice of Exemption with the STB. BNSF's Notice of Exemption proposed to consummate abandonment of a railroad line between milepost 14.57 and milepost 16.0 in Thurston County, Washington (the railroad corridor) within fifty days. According to BNSF's Notice of Exemption, "[n]o local or overhead freight rail traffic

---

[1] The plaintiffs in <u>Lucier</u> are as follows: Andrew S. Lucier, parcel number 12708230303; Kris Allen O'Bannon, parcel number 12707410201; Jan Pettigrew, parcel number 12708230200; Scott L. and Susan K. Putzier, parcel number 12707410102; Keith D. Quentin, parcel number 12708220200; Kenneth T. and Shannon L. Kratina, parcel number 12707410202; Jon Sandberg, parcel number 12707410200; Robert M. and Kathleen L Shaputis, parcel number 12708320101; and Skiview Estates Association, parcel number 74590100000.

At the beginning of this litigation, <u>Lucier</u> plaintiffs Lawrence E. and Marilyn G. Nelson, Nicholas M. Shearer, and Sprague and Jean Russell also were pursuing takings claims against defendant. Subsequently, plaintiffs in <u>Lucier</u> voluntarily moved to dismiss the claims brought by Lawrence E. and Marilyn G. Nelson, Nicholas M. Shearer, and Sprague and Jean Russell on March 16, 2018, which the court granted, without prejudice, on March 20, 2018.

[2] The plaintiffs in <u>Beattie</u> are as follows: Thomas E. Beattie, parcel number 12708230403; Clinton L. Termini, parcel number 12707410101; and Stephen Upton, parcel number 12708230304.

has traveled over the Line since prior to 2005." By letter dated May 24, 2016, Thurston County Public Works (Thurston County) filed a request for a public use condition and a request for interim trail use with the STB. The Thurston County May 24, 2016 request indicated that it was willing to assume financial responsibility for the portion of the railroad corridor that BNSF was seeking to abandon in Thurston County. On June 2, 2016, BNSF filed a response to Thurston County's May 24, 2016 request, which stated that BNSF did not object to the issuance of a NITU.

On July 19, 2016, the STB issued a NITU that permitted BNSF and Thurston County to negotiate a trail use agreement for the railroad corridor. The STB initially granted BNSF and Thurston County a 180-day period from the issuance of the NITU to negotiate a trail use agreement, which concluded on January 16, 2017. By an electronic filing, dated January 25, 2017, BNSF informed the STB that, on January 19, 2017, BNSF and Thurston County had reached an agreement to railbank the railroad corridor.

The agreement entered into by BNSF and Thurston County on January 19, 2017, was titled "RAILBANKING AND MARKET SALE CONTRACT" (the Agreement). (capitalization in original). Under the Agreement, BNSF agreed to convey, via quitclaim deed, "all of BNSF's right, title and interest" in the railroad corridor to Thurston County in exchange for $346,500.00. BNSF also reserved "the right to reactivate and restore rail service on the [railroad corridor] pursuant to the National Trails System Act, as amended . . . ." Thurston County agreed not to "impair future restoration of rail service" and to allow reactivation of rail service on the railroad corridor at any time. On February 22, 2017, BNSF and Thurston County executed a quitclaim deed conveying the railroad corridor to Thurston County. The February 22, 2017 quitclaim deed stated that the quitclaim deed was subject "to the terms of that certain Railbanking and Market Sale Contract between BNSF and Grantee [Thurston County], dated January 19, 2017" and included BNSF's right to reactivate and restore rail service on the railroad corridor pursuant to the Trails Act.

Plaintiffs and defendant agree that BNSF held an easement for railroad purposes in the railroad corridor. In both of the above-captioned cases, however, the parties dispute whether recreational trail use exceeded the scope of BNSF's easement in the railroad corridor, and whether plaintiffs had an interest in the land underlying the railroad corridor.[3]

### BNSF's Interest in the Railroad Corridor

According to filings submitted by plaintiffs to this court, the Northern Pacific Railway Company, BNSF's predecessor-in-interest, filed a map and valuation schedule

---

[3] Beattie plaintiffs contend that BNSF abandoned its interest in the railroad corridor, but the Beattie plaintiffs state that "Plaintiffs have decided to argue in this motion only that recreational trail use was beyond the scope of the rail purpose easements, as such issue would be dispositive if decided in Plaintiffs' favor." Similarly, Lucier plaintiffs argue that "the easements had been abandoned prior to the issuance of the NITU," but "elect to argue in this motion that recreational trail use was beyond the scope of the railroad purpose easements, as such issue would be dispositive if decided in Plaintiffs' favor."

with the Interstate Commerce Commission (ICC) in 1917, which indicated the manner in which the Northern Pacific Railway Company obtained its interest in the railroad corridor. The ICC valuation map indicates that the Northern Pacific Railway Company obtained its interest in the pertinent portion of the railroad corridor at issue in the above-captioned cases partially through four deeds, each of which is titled as a "Right Of Way Deed," and partially through "[a]dverse possession."

Right of Way Deeds

The four right of way deeds were individually entered into by the Tacoma Olympia and Grays Harbor Railroad Company and E. W. Austin and D. L. Austin (Austin deed), L. W. Mann and Laura E. Mann (Mann deed), A. A. Hunter and Sarah E. Hunter (Hunter deed), and P. P. Carroll and Sarah J. T. Carroll (Carroll deed), respectively, in 1890.[4] According to the ICC valuation map, the "Tacoma Olympia and Grays Harbor Railroad Company conveyed its entire property to the United Railroads of Washington by deed on Aug. 5, 1890," and "[t]he United Railroads of Washington conveyed their entire property to Northern Pacific Railway Company by deed dated Feb. 14, 1898 . . . ." The Austin deed, Mann deed, Hunter deed, and Carroll deed conveyed land in sections of the railroad corridor that abut parcels owned by <u>Lucier</u> plaintiffs Kris Allen O'Bannon, Jan Pettigrew,[5] Scott L. and Susan K. Putzier, Keith D. Quentin, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Robert M. and Kathleen L Shaputis, and Skiview Estates Association, and <u>Beattie</u> plaintiff Clinton L. Termini. Although the four right of way deeds conveyed different parcels of land that abut different plaintiffs' properties and were executed for different amounts and on different dates, the operative language of each of the four deeds is substantially the same. The Austin deed, in pertinent part, is reproduced[6] below:

> This Indenture, Made and entered into this 27th day of September 1890, by and between E.W. Austin and D. L. Austin his wife, of the County of Thurston in the Sate [sic] of Washington, party of the first part, and The Tacoma, Olympia, and Gray's Harbor Railroad Company, a corporation,

---

[4] As discussed below, the Tacoma Olympia and Grays Harbor Railroad Company conveyed its interest in the railroad corridor to the United Railroads of Washington in 1890, and the United Railroads of Washington conveyed its interest in the railroad corridor to BNSF's predecessor-in-interest in 1898.

[5] <u>Lucier</u> plaintiffs allege BNSF's predecessor-in-interest obtained its interest in the railroad corridor adjacent to <u>Lucier</u> plaintiff Jan Pettigrew's parcel through a right of way deed and through a prescriptive easement. The ICC valuation map indicates the railroad corridor abutting the northern part of Pettigrew's parcel was obtained by "adverse possession," while the railroad corridor abutting the southern part of Pettigrew's parcel was acquired through the Hunter deed.

[6] As discussed above, with the exception of the minor differences noted above, the language in the Austin deed is substantially similar to the language in the Mann deed, Hunter deed, and Carroll deed and is illustrative of the language employed by the parties that executed the Mann deed, Hunter deed, and Carroll deed.

duly incorporated and existing under the laws of the State of Washington, party of the second part. Witneseth, That for and in consideration of the sum of One Hundred Dollars, in lawful money of the United States, to said party of the first part in had paid by said party of the second part, the receipt whereof is hereby acknowledged, the said parties of the first part have granted, and hereby do grant to the said party of the second part, its successors and assigns, a right of way One Hundred feet in width, for the construction, operation and maintenance of said railroad company's proposed line of railroad: on, over, across, and through the following described tracts or parcels of land situated in Thurston County, State of Washington, as follows to wit: That certain part of the Nelson Barnes donation land claim lying in the northwest quarter (1/4) of section eight (8) township seventeen (17) north, range two (2) west, Willamette Meridian and said parties of the first part have granted, bargained and sold, and by these presents do grant, bargain, sell and convey and warrant to said party of the second part and to its successors and assigns, as and for such right of way a strip of land fifty feet in width, on each side of the centre line of said proposed railroad. as heretofore surveyed and now located and staked out, and hereafter to be constructed, operated and maintained, upon, across, over, and through the land hereinafter described. To Have and to Hold the said strip of land to the said party of the second par, its successors and assigns, so long as the same shall be used for railroad purposes. Witness our hands and seals this 27th day of September, 1890.

(capitalization in original). Plaintiffs contend that, under Washington law, the four right of way deeds conveyed a "railroad purpose easement" to BNSF's predecessor-in-interest. Defendant "does not dispute that the underlying source deeds at issue here conveyed easements to the railroad for the principal purpose of operating a railroad."

<u>Adverse Possession/Prescriptive Easement</u>

The ICC valuation schedule and ICC valuation map, submitted by the Northern Pacific Railway Company in 1917, indicate that the section of the railroad corridor in valuation parcel number 13, which plaintiffs in <u>Lucier</u> and <u>Beattie</u> and defendant all indicate abuts land owned by <u>Lucier</u> plaintiffs Andrew S. Lucier and Jan Pettigrew and <u>Beattie</u> plaintiffs Thomas E. Beattie and Stephen Upton, was "acquired by adverse possession." The parties have not submitted to the court a deed conveying to any of BNSF's predecessors-in-interest the section of the railroad corridor in valuation parcel number 13, which the ICC valuation schedule and ICC valuation map indicate was "acquired by adverse possession."

Notwithstanding the use of the term "adverse possession" in the ICC valuation schedule and ICC valuation map, plaintiffs in <u>Lucier</u> and <u>Beattie</u> allege BNSF's predecessor-in-interest only obtained prescriptive easements in the sections of the railroad corridor that abuts the parcels owned by <u>Lucier</u> plaintiffs Andrew S. Lucier and

Jan Pettigrew[7] and <u>Beattie</u> plaintiffs Thomas E. Beattie and Stephen Upton. Plaintiffs assert that, under Washington law, "where a railroad establishes its line of railroad by use, its gains a prescriptive easement." According to defendant, however, it is unclear whether the Northern Pacific Railway Company acquired the section of the railroad corridor that abuts the parcels owned by <u>Lucier</u> plaintiffs Andrew S. Lucier and Jan Pettigrew and <u>Beattie</u> plaintiffs Thomas E. Beattie and Stephen Upton through adverse possession. Defendant maintains that deeds in the chains of title of <u>Lucier</u> plaintiffs Andrew S. Lucier and Jan Pettigrew and <u>Beattie</u> plaintiffs Thomas E. Beattie and Stephen Upton contain references to a deed issued by Northern Pacific Railway Company in 1903, in which Northern Pacific Railway Company conveyed a portion of land to the North End Lumber Company and "expressly excepted the right of way, reserving the right of way for itself and also reserving mineral rights." Defendant argues that the presence of the 1903 deed between Northern Pacific Railway Company and North End Lumber Company "in Plaintiffs' chain of title raises a genuine issue of material fact as to the original source deed, and whether the railroad did, in fact, acquire that segment of the Corridor by adverse possession."

The 1903 deed between the Northern Pacific Railway Company and the North End Lumber Company conveyed to the North End Lumber Company 160 acres of land consisting of the "southeast quarter (SE 1/4) of Section No. seven (7) in Township seventeen (17) North of Range two (2) West of the Willamette Principal Meridian . . . ." The 1903 deed also provided:

> excepting therefrom, however, a strip of land extending through the same  . . . of the width of one hundred (100) feet lying between two lines each drawn parallel to and distant fifty (50) feet from the center line of the main track of the Northern Pacific Railway as the same is now located, constructed and operated on, over or across said described premises or within fifty (50) feet of same, and also reserving and excepting from said lands such as now known or shall hereafter be ascertained to contain minerals of any nature whatsoever . . . .

Defendant notes that the deed conveying parcel number 12708230304 to <u>Beattie</u> plaintiff Stephen Upton contains reservations "in deed from the Northern Pacific Railroad Company" for mineral rights. Similarly, the deed conveying parcel number 12708230403 to <u>Beattie</u> plaintiff Thomas E. Beattie contains a "RESERVATION BY THE NORTHERN PACIFIC RAILWAY COMPANY OF MINERAL RIGHTS . . . ." (capitalization in original). The deed conveying parcel number 12708230303 to <u>Lucier</u> plaintiff Andrew S. Lucier and the deed conveying parcel number 12708230200 to <u>Lucier</u> plaintiff Jan Pettigrew, however, do not contain mineral reservations in favor of the Northern Pacific Railroad Company.

---

[7] As indicated above, <u>Lucier</u> plaintiff Jan Pettigrew alleges that the railroad corridor adjacent to the northern portion of her parcel was obtained by prescriptive easement. <u>Lucier</u> plaintiff Jan Pettigrew alleges  the railroad corridor abutting the southern part of Pettigrew's parcel was acquired through the Hunter deed.

In the chains of title for <u>Lucier</u> plaintiffs Andrew S. Lucier and Jan Pettigrew and <u>Beattie</u> plaintiffs Thomas E. Beattie and Stephen Upton, however, there is a deed dated January 25, 1956, which states "[a]s to SE¼ Section 7: Mineral reservations made by Northern Pacific Railway Company, in deed dated October 26, 1903 and recorded in Volume 57 of Deeds, page 579."[8] The January 25, 1956 deed appears to reference the 1903 deed between Northern Pacific Railway Company and North End Lumber Company that defendant argues creates a genuine issue of material fact regarding how BNSF's predecessor-in-interest obtained its interest in the section of the railroad corridor in valuation parcel number 13. The mineral reservation in the January 25, 1956 deed, however, applies to land in the "SE¼ Section 7," and <u>Lucier</u> plaintiffs Andrew S. Lucier and Jan Pettigrew and <u>Beattie</u> plaintiffs Thomas E. Beattie and Stephen Upton own parcels located in section eight.

<u>Scope of Easements</u>

The parties also dispute whether recreational trail use by the public is within the scope of the alleged easements acquired by BNSF through the right of way deeds and alleged prescriptive easements. In the 2017 Agreement between BNSF and Thurston County and accompanying quitclaim deed, BNSF conveyed its interest in the railroad corridor to Thurston County. Thurston County agreed to assume all financial responsibility for the railroad corridor and to use the railroad corridor for trail purposes, subject to BNSF's right to reactivate rail service on the railroad corridor.

Plaintiffs argue that, under Washington State law, recreational trail use and railbanking are beyond the scope of BNSF's easement in the railroad corridor. Defendant, however, contends that recreational trail use does not exceed the scope of BNSF's easement because, "under Washington law, public trail use is a permitted incidental use for the Corridor that is not inconsistent with the operation of the railroad." Additionally, defendant asserts "[t]he deed for [<u>Lucier</u>] Plaintiff Pettigrew already appears to have an easement for trail use purposes." The legal description of <u>Lucier</u> plaintiff Jan Pettigrew's parcel in the plat map of boundary line adjustment 990614 (BLA-990614) provides "*TOGETHER WITH EASEMENTS FOR INGRESS, EGRESS AND UTILITIES AS GRANTED IN THE BASIC TRAIL PERMIT # GB-9800002 FOR THE GATE-BELMORE TRAIL AND EASEMENT RECORDED UNDER AUDITOR'S FILE NO. 3204150.*" (emphasis and capitalization in original). The parties have not provided the court with the trail permit referenced in the plat map of BLA-990614, which contains <u>Lucier</u> plaintiff Jan Pettigrew's property, or expanded upon what the trail permit entails. At oral argument on May 16, 2018, John Sears, counsel of record for the <u>Lucier</u> plaintiffs, submitted to the court as an exhibit to the <u>Lucier</u> plaintiffs' February 7, 2018 sur-reply a three-page document, which Mr. Sears indicated contained the results of a search he conducted regarding easement number 3204150, the number of the easement referenced in the plat

---

[8] The October 26, 1903 deed entered into by the Northern Pacific Railway Company and the North End Lumber Company begins on a page numbered "579," although it is unclear in which volume of deeds the 1903 deed between the Northern Pacific Railway Company and the North End Lumber Company is located.

map of BLA-990614.[9] According to Mr. Sears, the three-page document demonstrates that easement number 3204150 does not apply to <u>Lucier</u> plaintiff Jan Pettigrew's parcel. Indeed, the three-page document indicates that easement number 3204150 applies to a different parcel and does not apply to <u>Lucier</u> plaintiff Jan Pettigrew's parcel.

**<u>Plaintiffs' Interest in the Railroad Corridor</u>**

The parties also dispute whether the plaintiffs own the land underlying the railroad corridor. Defendant argues that all of the plaintiffs' claims should be dismissed because the plaintiffs do not possess an interest in the land underlying the railroad corridor. Plaintiffs, however, assert that they own the land underlying the railroad corridor in fee simple.

<u>Large Lot Subdivision 0146</u>

Nine of the twelve plaintiffs in the above-captioned cases own property that corresponds with tracts located in Large Lot Subdivision 0146 (LLS-0146). The nine plaintiffs are <u>Lucier</u> plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L Shaputis and <u>Beattie</u> plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton. LLS-0146 is a large lot subdivision consisting of thirty-two tracts of land. The plat map of LLS-0146 consists of three sheets that illustrate LLS-0146, each of which refers to the land within LLS-0146 as "BLACK LAKE ESTATES." (capitalization in original). The first sheet of the plat map of LLS-0146 illustrates tracts 1 through 5, the second sheet of the plat map of LLS-0146 illustrates tracts 6, 7, and 20 through 32, and the third sheet of the plat map of LLS-0146 illustrates tracts 8 through 19. The surveyor's certificate on the plat map of LLS-0146 indicates that the LLS-0146 plat map was created on July 26, 1982 by "TERRY ASBJORNSEN on FOR B.L. ESTATES, G.P." (capitalization in original). The auditor's certificate on the three sheets of the plat map of LLS-0146 indicates that the plat map of LLS-0146 was filed on September 7, 1982. Plaintiffs in <u>Lucier</u> and <u>Beattie</u> have submitted to the court plat maps of certain short subdivisions, which indicate that tracts of land within LLS-0146 correspond with short subdivisions that contain multiple parcels of land.

The deeds which granted nine of the twelve <u>Lucier</u> and <u>Beattie</u> plaintiffs an interest in their properties contain references to plat maps of short subdivisions, which all indicate that the short subdivisions, wherein the nine plaintiffs' properties are located, correspond with tracts of land located LLS-0146. <u>Lucier</u> plaintiff Andrew S. Lucier and <u>Beattie</u> plaintiff Stephen Upton own property located in Short Subdivision No. SS-2411 (SS-2411). The deed conveying parcel number 12708230303 to <u>Lucier</u> plaintiff Andrew S. Lucier states that it is conveying "PARCEL 3 OF SHORT SUBDIVISION NO. SS-2411 AS RECORDED SEPTEMBER 18, 1992 . . . ." (capitalization in original). The deed conveying parcel number 12708230304 to <u>Beattie</u> plaintiff Stephen Upton states that it is conveying

---

[9] Sarah Izfar, counsel of record for defendant in the above-captioned cases, stated at the May 16, 2018 oral argument that she did not object to the admission of the three-page document provided to the court and the parties at the May 16, 2018 oral argument.

"PARCEL 4 OF SHORT SUBDIVISION NO. SS-2411, AS RECORDED SEPTEMBER 18, 1992 . . . ." (capitalization in original). The legal description on the plat map of SS-2411 indicates that it is "ON LARGE LOT SUBDIVISION LLS-0146." (capitalization in original). Although the plat map of SS-2411 does not indicate which tract of land on LLS-0146 SS-2411 is located in, <u>Lucier</u> plaintiffs, <u>Beattie</u> plaintiffs, and defendant all indicate that tract 1 of LLS-0146 corresponds with SS-2411 and contains the properties owned by <u>Lucier</u> plaintiff Andrew S. Lucier and <u>Beattie</u> plaintiff Stephen Upton.

Three of the <u>Lucier</u> plaintiffs own property in Short Subdivision No. SS-2066 (SS-2066). The deed conveying parcel number 12707410201 to <u>Lucier</u> plaintiff Kris Allen O'Bannon states that it is conveying "Lot 2 of Short Subdivision No. SS-2066, as recorded June 23, 1986" and an "easement for road and utilities, as delineated on Large Lot Subdivision Map No. LL-0146, as recorded September 7, 1982 . . . ." The deed conveying parcel number 12707410202 to <u>Lucier</u> plaintiffs Kenneth T. and Shannon L. Kratina states that it is conveying "Lot 3 of Short Subdivision No. SS-2066 as recorded June 23, 1986 . . . ." Likewise, the deed conveying parcel number 12707410200 to <u>Lucier</u> plaintiff Jon Sandberg states that it is conveying "Lot 1 of Short Subdivision No. SS-2066 . . . ." The legal description on the plat map of SS-2066 states that is in "TRACT 7 of large lot subdivision LLS-0146 . . . ." (capitalization in original).

<u>Lucier</u> plaintiffs Robert M. and Kathleen Shaputis own property located in Short Subdivision No. SS-1966 (SS-1966). The deed conveying parcel number 12708320101 to <u>Lucier</u> plaintiffs Robert M. and Kathleen Shaputis states that it is conveying "LOT 2 OF THURSTON COUNTY SHORT PLAT NO. SS-1966, ACCORDING TO SHORT PLAT RECORDED SEPTEMBER 20, 1984 . . . ." (capitalization in original). The legal description on the plat map of SS-1966 states that it is in "TRACT 5 of large lot subdivision LLS-0146 . . . ."

<u>Lucier</u> plaintiffs Scott and Susan Putzier and <u>Beattie</u> plaintiff Clinton L. Termini own property located in Short Subdivision No. SS-1962 (SS-1962). The deed conveying parcel number 12707410102 to <u>Lucier</u> plaintiffs Scott and Susan Putzier states that it is conveying "PARCEL NO. 3 OF SHORT SUBDIVISION NO. SS-1962, AS RECORDED SEPTEMBER 20, 1984 . . . ." (capitalization in original). The deed conveying parcel number 12707410101 to <u>Beattie</u> plaintiff Clinton L. Termini states that it is conveying "PARCEL 2 OF SHORT SUBDIVISION NO. SS-1962, AS RECORDED SEPTEMBER 20, 1984 . . . ." (capitalization in original). The legal description on the plat map of SS-1962 states that it is in "TRACT 6 of large lot subdivision LLS-0146 . . . ."

Additionally, the deed conveying parcel number 12708230403 to <u>Beattie</u> plaintiff Thomas E. Beattie states that it is conveying "LOT 4 OF SHORT SUBDIVISION NO. SS-2110 [(SS-2110)], RECORDED JUNE 1, 1987 . . . ." (capitalization in original). The legal description on the plat map of SS-2110 states that it is in "TRACT 2 of large lot subdivision LLS-0146 . . . ." (capitalization in original).

Together, the three sheets of the plat maps of LLS-0146 illustrate that there are thirty-two tracts of land in LLS-0146. The legal description of LLS-0146 provides that LLS-

0146 runs "ALONG" the "BURLINGTON NORTHERN R. R. RIGHT OF WAY . . . ." (capitalization in original). The railroad corridor is illustrated on each of the three plat maps of LLS-0146. On the first sheet of the plat map of LLS-0146, directly to the right of the illustration of the railroad corridor, and running parallel with the illustration of the railroad corridor, is "B.N. R/W R.R. [centerline symbol] (NOT IN PLAT)." On the second sheet of the plat map of LLS-0146, directly next to and running parallel with the illustration of the railroad corridor, is "B.N. R.R. [centerline symbol] (NOT IN PLAT)." Similarly, on the third sheet of the plat map of LLS-0146, directly next to and running parallel with the illustration of the railroad corridor, is "B.N. RAILROAD R/W [centerline symbol] (NOT IN PLAT)." The plat map also illustrates numerous easements that are present on LLS-0146, including a "DRAINAGE AND UNIMPROVED MUTUAL EASEMENT," a "B.P.A. EASEMENT," a "BONNEVILLE POWER ADM EASEMENT," several "DRAINAGE EASEMENT[S]," several "UNIMPROVED MUTUAL EASEMENT[S]," and several "PRIVATE EASEMENT ROAD[S]." (capitalization in original). Additionally, the plat map of LLS-0146 uses metes and bounds to indicate the boundaries of the tracts of land that border the railroad corridor end at the edge of the railroad corridor. The third sheet of the plat map of LLS-0146 also indicates that there is fifty feet between the edge of Tract 8 and Tract 9 and "B.N. RAILROAD R/W [centerline symbol] (NOT IN PLAT)."

Moreover, the plat map of LSS-0146, which is labeled Black Lake Estates, appears to have been created by "BLACK LAKE ESTATES, a general partnership" (Black Lake Estates, G.P.). In the chains of titles for each of the nine plaintiffs owning property in LLS-0146, there is a contract, titled "MEMORANDUM OF REAL ESTATE CONTRACT," that was executed on February 24, 1982, by Boise Cascade Corporation and Black Lake Estates, G.P. (capitalization in original). The Memorandum of Real Estate Contract executed by Boise Cascade Corporation and Black Lake Estates, G.P. provides that Boise Cascade Corporation and Black Lake Estates, G.P. "have entered into a Contract to purchase and sell the following described real property," which was located in Section 7 and Section 8 in Township 17 North, Range 2 West. The Memorandum of Real Estate Contract also states that Black Lake Estates, G.P. was entitled to possess and to sell the land described in the Memorandum of Real Estate Contract, and that Boise Cascade Corporation "agrees that it will, upon receiving full payment of the purchase price from Purchasers [Black Lake Estates, G.P.], execute and deliver to Purchasers a standard form warranty deed to said Premises, as in said Contract provided." Subsequent to the execution of the Memorandum of Real Estate Contract on February 24, 1982, Black Lake Estates, G.P. conveyed land in Black Lake Estates to each to the predecessors-in-title for each of the nine plaintiffs who currently own property that corresponds with a tract located in LLS-0146.

Defendant argues that the nine plaintiffs owning property in LLS-0146, Lucier plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L Shaputis and Beattie plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton, should be dismissed because they have no interest in the railroad corridor. According to defendant, the metes and bounds in the plat map of LLS-0146 rebut the centerline presumption, and "the graphical depiction of the plat on LLS-0146 conclusively demonstrates that the Corridor

was not included in the plat." Beattie plaintiffs state that "it is the metes and bounds language in the plat [map of LLS-0146] that operated to rebut the centerline presumption," and Lucier plaintiffs state that "[p]laintiffs recognize that in this plat [LLS-0146], there is a metes and bounds description showing the legal description of the property. That description rebuts the centerline presumption." Plaintiffs, however, argue that the phrase "B.N. RAILROAD R/W [centerline symbol] (NOT IN PLAT)" "can also be taken to simply be an acknowledgement that the right of way was not meant to be represented on the plat." The nine plaintiffs owning land in LLS-0146 also argue that they are entitled to partial summary judgment regarding the issue of ownership underlying the railroad corridor because the plaintiffs "have provided all record evidence," including the chains of title for the plaintiffs who own property in LLS-0146, to demonstrate that plaintiffs own the property underlying the railroad corridor.

"Excepting" Deeds

Lucier plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association own property that does not correspond with a tract located in LLS-0146. Each of the three Lucier plaintiffs allege that they own land underlying the railroad corridor in fee because the property descriptions in their deeds "except" the easements from their parcels. Defendant, however, contends that Lucier plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association do not own land underlying the railroad corridor because "'excepting' means 'excluding.'"

The deed of Lucier plaintiff Jan Pettigrew's parcel identifies the parcel being conveyed as parcel A of BLA-990614. The plat map of BLA-990614 provides "DESCRIPTIONS OF ORIGINAL PARCELS" and "DESCRIPTIONS OF ADJUSTED PARCELS." (capitalization in original). The Descriptions of Original Parcels states:

*THAT PART OF GOVERNMENT LOT 1 OF SECTION 8, TOWNSHIP 17 NORTH, RANGE 2 WEST, W.M., LYING SOUTHEASTERLY OF RIGHT OF WAY OF NORTHERN PACIFIC RAILWAY COMPANY.*

*THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 17 NORTH, RANGE 2 WEST, W.M., EXCEPTING THEREFROM A 100 FOOT WIDE RIGHT OF WAY OF NORTHERN PACIFIC RAILWAY COMPANY.*

*ALSO EXCEPTING THE SOUTH 30 FEET FOR COUNTY ROAD KNOWN AS STONE ROAD.*

*ALSO EXCEPTING THAT PORTION LYING WESTERLY OF THE NORTHERN PACIFIC RAILWAY COMPANY RIGHT OF WAY.*

(emphasis and capitalization in original).When describing Parcel A of BLA-990614, Lucier plaintiff Jan Pettigrew's parcel, the Descriptions of Adjusted Parcels states:

*THAT PORTION OF GOVERNMENT LOT 1 OF SECTION 8, TOWNSHIP 17 NORTH, RANGE 2 WEST, W.M., THURSTON COUNTY, WASHINGTON, LYING SOUTHEASTERLY OF THE RIGHT OF WAY OF NORTHERN PACIFIC RAILWAY COMPANY RIGHT OF WAY.*

*ALSO THAT PORTION OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION LYING SOUTHEASTERLY OF THE NORTHERN PACIFIC RAILWAY COMPANY RIGHT OF WAY AND NORTHWESTERLY OF THE FOLLOWING DESCRIBED LINE: COMMENCING AT THE NORTHWEST CORNER OF SAID NORTHWEST QUARTER OF THE SOUTHWEST QUARTER; THENCE S 89°55'10''W ALONG THE NORTH LINE OF SAID SUBDIVISION A DISTANCE OF 862.87 FEET TO THE TRUE POINT OF BEGINNING OF SAID LINE: THENCE S29°41'23''W A DISTANCE OF 1485 FEET MORE OR LESS TO THE NORTH LINE OF STONE ROAD AND THE TERMINUS OF SAID LINE.*

*EXCEPTING THEREFROM THE NELSON BARNES DONATION LAND CLAIM NO. 37 IF ANY.*

*TOGETHER WITH EASEMENTS FOR INGRESS, EGRESS AND UTILITIES AS GRANTED IN THE BASIC TRAIL PERMIT # GB-9800002 FOR THE GATE-BELMORE TRAIL AND EASEMENT RECORDED UNDER AUDITOR'S FILE NO. 3204150.*

*ALSO TOGETHER WITH ANY EASEMENT, PERMITS AND RIGHT OF WAYS OF RECORD.*

(emphasis and capitalization in original).

In the deed conveying parcel number 12708220200 to <u>Lucier</u> plaintiff Keith D. Quentin, the parcel being conveyed is described as parcel AA of boundary line adjustment BLA-0777 (BLA-0777). The "LEGAL DESCRIPTIONS OF PARCELS" in BLA-0777 describes parcel AA as:

Government Lot 2 in Section 8, Township 17 North, Range 2 West, W.M. EXCEPTING therefrom the North 620 feet, the West 550.29 feet, and the right of way of the Northern Pacific Railway Company, if any, and TOGETHER with that part of the Nelson Barnes Jr. D.L.C. No. 37 in said Township 17 North, Range 2 West, W.M., lying Westerly of said railway right of way. EXCEPTING therefrom the North 620 feet.

(capitalization in original). The Legal Descriptions of Parcels further indicates that parcel AA is being conveyed

TOGETHER with and SUBJECT to an easement for ingress, egress and utilities over, across and under the South 20 feet of the North 640 feet of said Government Lot 2 and Nelson Barnes Jr. D.L.C. No. 37 lying Westerly of said railway right of way; ALSO TOGETHER with and SUBJECT to easements of record.

(capitalization in original).

A statutory warranty deed dated August 19, 2002, conveys parcel number 7459890100000 to Skiview Estates Association and states that it is conveying to Skiview Estates Association the real estate described in Exhibit A, and that the conveyance is "SUBJECT TO covenants, conditions, restrictions, reservations, easements and agreements of record, if any." The pertinent portion of Exhibit A to the statutory warranty deed conveying parcel number 7459890100000 to Skiview Estates Association provides the following legal description: "[t]he Southwest quarter of the Southwest quarter of Section 8, Township 17 North, Range 2 West, W.M., EXCEPT portion lying within Northern Pacific Railway Company right-of-way and EXCEPT the North 30 feet for the county road known as Stone Road." (capitalization in original). In a plat map of Skiview Estates Association's property, metes and bounds indicate that the railroad corridor is one of the boundaries of Skiview Estates Association's property. The railroad corridor is labeled as "FORMER NORTHERN PACIFIC RAILWAY CO. – NOW THURSTON COUNTY PARKS DEPT."

## Procedural History

On July 22, 2016, the plaintiffs in Lucier filed their initial complaint against the United States in this court. Plaintiffs in Lucier amended their complaint twice, filing their second and final amended complaint on January 11, 2017. Plaintiffs in Beattie filed their initial and only complaint against the United States in this court on July 27, 2016.[10] On January 11, 2017, the above-captioned cases were consolidated for case management purposes.

On October 6, 2017, plaintiffs in Lucier and Beattie each filed a partial motion for summary judgment addressing BNSF's interest in the railroad corridor, and whether the scope of the easements previously held by BNSF had been exceeded. In Lucier plaintiffs' October 6, 2017 motion, Lucier plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association moved for partial summary judgment on the issue of fee ownership of the land underlying the railroad corridor. Lucier plaintiffs stated that "all other plaintiffs reserve this issue" of ownership of the land underlying the railroad corridor for trial. Beattie plaintiffs stated that "[p]laintiffs do not move for summary judgment on the issue of Plaintiffs' ownership of property in the railroad corridor, but instead request that it be reserved for trial, along with damages." On November 6, 2017, defendant responded to Lucier plaintiffs' and Beattie plaintiffs' partial motions for summary judgment and cross-moved for summary judgment, including on the issue of ownership of the land underlying

---

[10] Beattie was originally assigned to Judge Kaplan on July 27, 2016. On September 9, 2016, Beattie was reassigned to the undersigned.

the railroad corridor. On December 6, 2017, Lucier and Beattie plaintiffs filed their replies to defendant's response and response to defendant's cross-motion for summary judgment, and also cross-moved for partial summary judgment regarding the issue of ownership of the land underlying the railroad corridor. Lucier plaintiffs stated, "[i]nitially, Plaintiffs [in their October 6, 2017 motion for partial summary judgment] suggested that determination of whether the remaining Plaintiffs owned the fee underlying the easements should be reserved for trial. However, the United States brought that issue front and center suggesting that summary judgment on that issue is appropriate." Beattie plaintiffs stated "[w]hile Plaintiffs initially stated their preference that this issue be reserved for trial, upon reflection, now that the government has raised the issue of cognizable property interests in its cross-motion, Plaintiffs believe that the Court should grant summary judgment in their favor on this issue . . . ." Lucier plaintiffs attached to their December 6, 2017 motion an expert affidavit of Mark D. Schedler and an affidavit of John A. Kilpatrick, attached to which were the chains of title for Lucier plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Jan Pettigrew, Scott L. and Susan K. Putzier, Kenneth T. and Shannon L. Kratina, Jon Sandberg, and Robert M. and Kathleen L Shaputis. Beattie plaintiffs attached to their December 6, 2017 motion an expert affidavit of Mr. Schedler, which was identical to the affidavit of Mr. Schedler submitted in Lucier, and a different affidavit of Dr. Kilpatrick, attached to which were the chains of title for all three Beattie plaintiffs.

On January 8, 2018, defendant filed its reply, in which defendant sought to strike plaintiffs' experts and their affidavits. Both sets of plaintiffs moved for leave to file sur-replies in order to address defendant's argument that this court should strike plaintiffs' experts and their affidavits, which the court granted, and, on February 7, 2018, both sets of plaintiffs filed their sur-replies. Lucier plaintiffs attached to their sur-reply another expert affidavit of Dr. Kilpatrick, chains of title for Lucier plaintiffs Jan Pettigrew and Keith D. Quentin, and updated chains of title for the six Lucier plaintiffs whose chains of title had already been submitted to the court. Likewise, Beattie plaintiffs attached to their sur-reply another expert affidavit of Dr. Kilpatrick and updated chains of title for the Beattie plaintiffs. Both sets of plaintiffs indicated in their sur-replies that they did not oppose defendant having an opportunity to address the materials attached to their sur-replies, and the court provided defendant with an opportunity to respond. On March 7, 2018, defendant filed a response to plaintiffs' sur-replies, in which defendant again moved to strike plaintiffs' experts and their affidavits.

The court heard oral argument on May 16, 2018 regarding the parties' cross-motions and defendant's motion to strike the affidavits of Mr. Schedler and Dr. Kilpatrick. During the May 16, 2018 oral argument, Mr. Sears, counsel of record for Lucier plaintiffs, and Thomas Stewart, counsel of record for Beattie plaintiffs, indicated that, if the above-captioned cases were to proceed to trial, Lucier and Beattie plaintiffs would not produce any additional evidence relevant to the resolution of the plaintiffs' claims in the above-captioned cases. Additionally, during the May 16, 2018 oral argument, the court struck the affidavits of Mr. Schedler and Dr. Kilpatrick. Regarding Mr. Schedler's affidavits, on May 18, 2018, the court issued another order stating, "[a]s the court explained at the May 16, 2018 hearing, Mr. Schedler's affidavits do not contain information which assists the court with evaluating the evidence before the court in the above-captioned cases."

Regarding Dr. Kilpatrick's affidavits, on May 18, 2018, the court issued another order stating:

> After consideration of the briefs filed by the parties and the presentation at the argument on May 16, 2018, the court **STRIKES** the two affidavits of Dr. Kilpatrick submitted by the plaintiffs in Lucier and the two affidavits of Dr. Kilpatrick submitted by the plaintiffs in Beattie, subject to renewal of Dr. Kilpatrick's affidavits in both cases if appropriate at a later date on motion by the parties.
>
> However, upon plaintiffs' request, the court admitted into evidence the chains of title attached to Dr. Kilpatrick's affidavits as exhibits to the parties' motions and cross-motions for partial summary judgment.

(emphasis and capitalization in original).

## DISCUSSION

RCFC 56 is similar to Rule 56 of the Federal Rules of Civil Procedure in language and effect. Both rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); Fed. R. Civ. P. 56(a) (2018); see also Alabama v. North Carolina, 560 U.S. 330, 344 (2010); Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Biery v. United States, 753 F.3d 1279, 1286 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Ladd v. United States, 713 F.3d 648, 651 (Fed. Cir. 2013); Minkin v. Gibbons, P.C., 680 F.3d 1341, 1349 (Fed. Cir. 2012); Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1309-10 (Fed. Cir. 2012); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d 1365, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2012); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1325 (Fed. Cir.), reh'g denied (Fed. Cir. 2010); Consol. Coal Co. v. United States, 615 F.3d 1378, 1380 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 564 U.S. 1004 (2011); 1st Home Liquidating Trust v. United States, 581 F.3d 1350, 1355 (Fed. Cir. 2009); Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008), reh'g and reh'g en banc denied, 556 F.3d 1329 (Fed. Cir. 2009); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1370-71 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005); Mata v. United States, 114 Fed. Cl. 736, 744 (2014); Leggitte v. United States, 104 Fed. Cl. 315, 317 (2012); Arranaga v. United States, 103 Fed. Cl. 465, 467-68 (2012); Cohen v. United States, 100 Fed. Cl. 461, 469 (2011); Boensel v. United States, 99 Fed. Cl. 607, 610 (2011).

A fact is material if it will make a difference in the result of a case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968 (Fed. Cir. 2009) (quoting Anderson

v. Liberty Lobby, Inc., 477 U.S. at 248); Mata v. United States, 114 Fed. Cl. at 744; Arranaga v. United States, 103 Fed. Cl. at 467-68; Thompson v. United States, 101 Fed. Cl. 416, 426 (2011); Cohen v. United States, 100 Fed. Cl. at 469. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Gorski v. United States, 104 Fed. Cl. 605, 609 (2012); Walker v. United States, 79 Fed. Cl. 685, 692 (2008); Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; see, e.g., Schlup v. Delo, 513 U.S. 298, 332 (1995); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); TigerSwan, Inc. v. United States, 118 Fed. Cl. 447, 451 (2014); Dana R. Hodges Trust v. United States, 111 Fed. Cl. 452, 455 (2013); Cohen v. United States, 100 Fed. Cl. at 469-70; Boensel v. United States, 99 Fed. Cl. at 611; Macy Elevator, Inc. v. United States, 97 Fed. Cl. 708, 717 (2011); Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States, 87 Fed. Cl. 113, 126 (2009); Johnson v. United States, 49 Fed. Cl. 648, 651 (2001), aff'd, 52 F. App'x 507 (Fed. Cir. 2002), published at 317 F.3d 1331 (Fed. Cir. 2003). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-52; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1993); Leggitte v. United States, 104 Fed. Cl. at 316. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d at 1372; Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968; Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2008); Rothe Dev. Corp. v. U.S. Dep't of Def., 262 F.3d 1306, 1316 (Fed. Cir. 2001); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such cases, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

In appropriate cases, summary judgment:

saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614-15 (1991) (quoting Pure Gold, Inc. v. Syntex, (U.S.A.) Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)) (citation omitted), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992); see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999) ("The purpose of summary judgment is not to deprive a litigant of a trial, but to avoid an unnecessary trial when only one outcome can ensue."); Metric Constr. Co., Inc. v. United States, 73 Fed. Cl. 611, 612 (2006).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 555 U.S. 812 (2008); Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999); TigerSwan, Inc. v. United States, 118 Fed. Cl. at 451; Stephan v. United States, 117 Fed. Cl. 68, 70 (2014); Gonzales-McCaulley Inv. Grp., Inc. v. United States, 101 Fed. Cl. 623, 629 (2011). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. See Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Yant v. United States, 588 F.3d 1369, 1371 (Fed. Cir. 2009), cert. denied, 562 U.S. 827 (2010); Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co., 272 F.3d 1365, 1369 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 293 F.3d 1364 (Fed. Cir. 2002), cert. denied, 539 U.S. 957 (2003); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1998); see also Am. Pelagic Co. v. United States, 379 F.3d at 1371 (citing Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1345-46 (Fed. Cir. 2000)); Dana R. Hodges Trust v. United States, 111 Fed. Cl. at 455; Boensel v. United States, 99 Fed. Cl. at 611 ("'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 255) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Casitas Mun. Water Dist. v. United States, 543 F.3d at 1283; and Lathan Co. Inc. v. United States, 20 Cl. Ct. 122, 125 (1990))); see also Am. Seating Co. v. USSC Grp., Inc., 514 F.3d at 1266-67; Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807. "However, once a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." Republic Sav. Bank, F.S.B. v. United States, 584 F.3d 1369, 1374 (Fed. Cir. 2009); see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48.

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Riley & Ephriam Constr. Co. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005); Crown

Operations Int'l Ltd. v. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir.), reh'g denied (Fed. Cir. 2002); Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc., 109 F.3d 739, 741 (Fed. Cir.) (quoting Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994), reh'g denied and en banc suggestion declined (Fed. Cir. 1995)), reh'g denied and en banc suggestion declined (Fed. Cir. 1997); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; RQ Squared, LLC v. United States, 119 Fed. Cl. 751, 757-58 (2015), subsequent determination, 129 Fed. Cl. 742 (2017), aff'd, 708 F. App'x 685 (Fed. Cir. 2018). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. at 322; see also Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1354 (Fed. Cir. 2009); Long Island Sav. Bank, FSB v. United States, 503 F.3d at 1244; Fla. Power & Light Co. v. United States, 375 F.3d 1119, 1124 (Fed. Cir. 2004); Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001); Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; Rasmuson v. United States, 109 Fed. Cl. 267, 271 (2013). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006).

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case, and it does not follow that summary judgment should be granted to one side or the other. See Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968-69; B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001); Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000); Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1037 n.5 (9th Cir. 2000), cert. denied, 532 U.S. 942 (2001); Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) ("The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other."), reh'g denied and en banc suggestion declined (Fed. Cir. 1999); Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998); Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997); LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968), cert. denied, 393 U.S. 1083 (1969); Rogers v. United States, 90 Fed. Cl. 418, 427 (2009), subsequent determination, 93 Fed. Cl. 607 (2010), aff'd, 814 F.3d 1299 (2015); Consol. Coal Co. v. United States, 86 Fed. Cl. 384, 387 (2009), aff'd, 615 F.3d 1378 (Fed. Cir.), and reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 564 U.S. 1004 (2011); St. Christopher Assocs., L.P. v. United States, 75 Fed. Cl. 1, 8 (2006), aff'd, 511 F.3d 1376 (Fed. Cir. 2008); Reading & Bates Corp. v. United States, 40 Fed. Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration, or, otherwise stated, in favor of the non-moving party. See

First Commerce Corp. v. United States, 335 F.3d 1373, 1379 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); see also DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1322 (Fed. Cir. 2001); Gart v. Logitech, Inc., 254 F.3d 1334, 1338-39 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1114 (2002); Oswalt v. United States, 85 Fed. Cl. 153, 158 (2008); Telenor Satellite Servs., Inc. v. United States, 71 Fed. Cl. 114, 119 (2006).

"Questions of law are particularly appropriate for summary judgment." Oenga v. United States, 91 Fed. Cl. 629, 634 (2010) (citing Dana Corp. v. United States, 174 F.3d 1344, 1347 (Fed. Cir. 1999) ("Summary judgment was appropriate here [in Dana Corp.] because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law. Moreover, on each issue one party or the other is entitled to judgment as a matter of law.")); see also Santa Fe Pac. R.R. v. United States, 294 F.3d 1336, 1340 (Fed. Cir. 2002) ("Issues of statutory interpretation and other matters of law may be decided on motion for summary judgment.").

In the above-captioned cases, all Lucier and Beattie plaintiffs allege that defendant effected a taking under the Fifth Amendment to the United States Constitution through the operation of the Trails Act. The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. The purpose of this Fifth Amendment provision is to prevent the government from "'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)), abrogated on other grounds by Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 (2005), recognized by Hageland Aviation Servs., Inc. v. Harms, 210 P.3d 444 (Alaska 2009); see also Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123-24, reh'g denied, 439 U.S. 883 (1978); Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536 (2005); E. Enters. v. Apfel, 524 U.S. 498, 522 (1998); Pumpelly v. Green Bay & Miss. Canal Co., 80 U.S. (13 Wall.) 166, 179 (1871) (citing to principles which establish that "private property may be taken for public uses when public necessity or utility requires" and that there is a "clear principle of natural equity that the individual whose property is thus sacrificed must be indemnified"); Rose Acre Farm, Inc. v. United States, 559 F.3d 1260, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2009), cert. denied, 559 U.S. 935 (2010); Janowsky v. United States, 133 F.3d 888, 892 (Fed. Cir. 1998); Res. Invs., Inc. v. United States, 85 Fed. Cl. 447, 469-70 (2009).

"[A] claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." E. Enters. v. Apfel, 524 U.S. at 520 (citing Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-19 (1984)); see also Acceptance Ins. Cos. v. United States, 503 F.3d 1328, 1336 (Fed. Cir. 2007); Morris v. United States, 392 F.3d 1372, 1375 (Fed. Cir. 2004) ("Absent an express statutory grant of jurisdiction to the contrary, the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000."). The United States Supreme Court has declared: "If there is a taking, the claim is 'founded upon the Constitution' and within

the jurisdiction of the [United States Court of Federal Claims] to hear and determine." Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 12 (1990) (Preseault I) (quoting United States v. Causby, 328 U.S. 256, 267 (1946)); see also Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1368 (Fed. Cir. 2005); Narramore v. United States, 960 F.2d 1048, 1052 (Fed. Cir. 1992); Hardy v. United States, 127 Fed. Cl. 1, 7 (2016); Perry v. United States, 28 Fed. Cl. 82, 84 (1993).

To succeed under the Fifth Amendment Takings Clause, a plaintiff must show that the government took a private property interest for public use without just compensation. See Dimare Fresh, Inc. v. United States, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (stating that the "'classic taking'" is one in which the government directly appropriates private property for its own use (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 324 (2002)), cert. denied, 136 S. Ct. 2461 (2016); Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004), cert. denied, 546 U.S. 811 (2005); Arbelaez v. United States, 94 Fed. Cl. 753, 762 (2010); Gahagan v. United States, 72 Fed. Cl. 157, 162 (2006). "The issue of whether a taking has occurred is a question of law based on factual underpinnings." Huntleigh USA Corp. v. United States, 525 U.S. 1370, 1377-78 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008). The government must be operating in its sovereign rather than in its proprietary capacity when it initiates a taking. See St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385 (Fed. Cir. 2008).

The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. See Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013); Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011); Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged takings. See Casitas Mun. Water Dist. v. United States, 708 F.3d at 1348; Jackson v. United States, 135 Fed. Cl. 436, 444 (2017) (citation omitted). Then, the court must determine whether the government action is a "'compensable taking of that property interest.'" Huntleigh USA Corp v. United States, 525 F.3d at 1377 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372).

To establish a taking, a plaintiff must have a legally cognizable property interest, such as the right of possession, use, or disposal of the property. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (citing United States v. Gen. Motors Corp., 323 U.S. 373 (1945)); Piszel v. United States, 833 F.3d 1366, 1374 (Fed. Cir. 2016), cert. denied, 138 S. Ct. 85 (2017); Rogers v. United States, 814 F.3d 1299, 1303 (Fed. Cir. 2015); Casitas Mun. Water Dist. v. United States, 708 F.3d at 1348; CRV Enters., Inc. v. United States, 626 F.3d 1241, 1249 (Fed. Cir. 2010), cert. denied, 563 U.S. 989 (2011); Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374-75 (Fed. Cir.), reh'g denied and en banc suggestion denied (Fed. Cir. 2000), cert. denied, 532 U.S. 941 (2001). "'It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.'" Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (quoting Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert.

denied, 353 U.S. 1077 (2002); and citing Cavin v. United States, 956 F.2d 1131, 1134 (Fed. Cir. 1992)). Therefore, "[i]f the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003); and M & J Coal Co. v. United States, 47 F.3d at 1154). The court does not address the second step "without first identifying a cognizable property interest." Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir.) (citing Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1381; and Conti v. United States, 291 F.3d 1334, 1340 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003)), reh'g denied and reh'g en banc denied (Fed. Cir. 2005); see also Balagna v. United States, 135 Fed. Cl. 16, 22 (2017), recons. denied, No. 14-21L, 2017 WL 5952123 (Fed. Cl. Dec. 1, 2017). Only if there is to be a next step, "'after having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest.'" Huntleigh USA Corp. v. United States, 525 F.3d at 1378 (quoting Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372); see also Casitas Mun. Water Dist. v. United States, 708 F.3d at 1348.

The STB has authority to regulate most railroad lines in the United States. See 49 U.S.C. § 702 (2012). A railroad seeking to abandon any part of its railroad line must either (1) file an application to abandon or (2) file a notice of exemption to abandon the line. See 49 U.S.C. § 10903 (2012); see also 49 C.F.R. § 1152.50 (2017). "If the STB approves a standard abandonment application or grants an exemption and the railroad ceases operation, the STB relinquishes jurisdiction over the abandoned railroad right-of-way and state law reversionary property interests, if any, take effect." Caldwell v. United States, 391 F.3d 1226, 1228-29 (Fed. Cir. 2004) (citing Preseault I, 494 U.S. at 6-8), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005).

"The Trails Act is designed to preserve railroad rights-of-way by converting them into recreational trails." Bywaters v. United States, 670 F.3d 1221, 1225 (Fed. Cir.), reh'g denied, 684 F.3d 1295 (Fed. Cir. 2012). By operation of the Trails Act, the STB may issue a NITU, "suspending exemption proceedings for 180 days to allow a third party to enter into an agreement with the railroad to use the right-of-way as a recreational trail." Barclay v. United States, 443 F.3d 1368, 1371 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), cert. denied, 846 U.S. 1209 (2007). Section 8(d) of the Trails Act, codified at 16 U.S.C. § 1247(d), "allows a railroad to negotiate with a state, municipal, or private group ('the trail operator') to assume financial responsibility for operating the railroad right of way as a recreational trail." See Bright v. United States, 603 F.3d 1273, 1275 (Fed. Cir.) (citing Caldwell v. United States, 391 F.3d at 1229), reh'g and reh'g en banc denied (Fed. Cir. 2010). If the railroad and an authorized trail provider[11] reach an agreement, the NITU extends indefinitely, and the corridor is railbanked, with interim trail use permitted. See

---

[11] The Trails Act indicates that a trail provider may be "a State, political subdivision, or qualified private organization [that] is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way." 16 U.S.C. § 1247(d).

49 C.F.R. § 1152.29(d)(1)-(2) (2016) ("The NITU will indicate that interim trail use is subject to future restoration of rail service . . . . Additionally, the NITU will provide that if the sponsor intends to terminate interim trail use on all or any portion of the right-of-way covered by the interim trail use agreement, it must send the [STB] a copy of the NITU and request that it be vacated on a specific date."); see also Biery v. United States, 753 F.3d at 1285 ("If the railroad and the [Surface Transportation] Board reach agreement, the land underlying the railway may be transferred to a trail operator (e.g., state, political subdivision, or qualified private organization) for interim trail use." (citing Citizens Against Rails–to–Trails v. Surface Transp. Bd., 267 F.3d 1144, 1149 (D.C. Cir. 2001))); Caldwell v. United States, 57 Fed. Cl. 193, 194 (2003) ("The term railbanking refers to the 'preservation of railroad corridor for future rail use,' while making the corridor available for other activities." (quoting Neb. Trails Council v. Surface Transp. Bd., 120 F.3d 901, 903 n.1 (8th Cir. 1997))), aff'd, 391 F.3d 1226 (Fed. Cir. 2004), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005).

When the NITU extends indefinitely and the corridor is railbanked, the STB retains jurisdiction and abandonment of the railroad corridor is blocked. See 16 U.S.C. § 1247(d) ("[I]n the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."); see also Rasmuson v. United States, 807 F.3d 1343, 1344 (Fed. Cir. 2015) ("NITUs 'preserve established railroad rights-of-way for future reactivation of rail service' and permit the railroad operator to cease operation without legally abandoning any 'rights-of-way for railroad purposes.'" (quoting 16 U.S.C. § 1247(d))).

As described by the United States Court of Appeals for the Federal Circuit:

Thus, section 8(d) of the Trails Act prevents the operation of state laws that would otherwise come into effect upon abandonment-property laws that would "result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners." Rail Abandonments-Use of Rights-of-Way as Trails, Ex Parte No. 274 (Sub-No. 13), 2 I.C.C. 2d 591, 1986 WL 68617 (1986). A Fifth Amendment taking occurs if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail. See Preseault II, 100 F.3d at 1552; see also Toews [v. United States], 376 F.3d at 1376.

Caldwell v. United States, 391 F.3d at 1229; see also Rogers v. United States, 814 F.3d at 1303 ("As we have previously explained in other rails-to-trails cases, a taking, if any, occurs when, pursuant to the Trails Act, the STB issues a Notice of Interim Trail Use ('NITU') to suspend the abandonment of the rail line by a railroad and preserve it for future active railroad use." (citing Barclay v. United States, 443 F.3d at 1373)); BHL Props., LLC v. United States, 135 Fed. Cl. 222, 227-28 (2017) (citing Caldwell v. United States, 391 F.3d at 1233).

The Federal Circuit has established a three-part inquiry to determine takings liability in cases involving the conversion of railroad rights of way for recreational trail use by means of 16 U.S.C. § 1247(d) of the Trails Act, as follows:

> (1) who owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (Preseault II). Phrased differently, the Federal Circuit has also indicated:

> the determinative issues for takings liability are (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate; (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).

Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing Preseault II, 100 F.3d at 1533).

According to the United States Court of Appeals for the Federal Circuit, "[i]t is settled law that a Fifth Amendment taking occurs in Rails-to-Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." Ladd v. United States, 630 F.3d 1015, 1019 (Fed. Cir. 2010), reh'g and reh'g en banc denied, 646 F.3d 910 (Fed. Cir. 2011); see also Rogers v. United States, 814 F.3d at 1303; Ellamae Phillips Co. v. United States, 564 F.3d at 1373. "It is the law-created right to own private property, recognized and enforced by the Constitution, legislation, and common law, that gives the owner an historically rooted expectation of compensation." Preseault II, 100 F.3d at 1540. The United States Court of Appeals for the Federal Circuit in Preseault II also indicated

> that power includes the power to preempt state-created property rights, including the rights to possession of property when railroad easements terminate. As Justice O'Connor succinctly pointed out in her concurring

opinion in Preseault I, however, having and exercising the power of preemption is one thing; being free of the Constitutional obligation to pay just compensation for the state-created rights thus destroyed is another.

Id. at 1537 (citing Preseault I, 494 U.S. at 22).

To determine the nature of the property interest at issue, the court looks to state law. See Rogers v. United States, 814 F.3d at 1305 ("We analyze the property rights of the parties in a rails-to-trails case under the relevant state law."). The United States Court of Appeals for the Federal Circuit, interpreting a takings claim for a railroad right-of-way, stated that, "state law generally creates the property interest in a railroad right-of-way." Barclay v. United States, 443 F.3d at 1374 (citing Preseault I, 494 U.S. at 8, 16). In a footnote on the same page, the United States Court of Appeals for the Federal Circuit repeated, "[i]n Toews v. United States, 376 F.3d 1371 (Fed. Cir. 2004), we reiterated that state law controls the basic issue of whether trail use is beyond the scope of the right-of-way." Barclay v. United States, 443 F.3d at 1374 n.4. "The nature of the interest conveyed is determined according to the law of the state where the conveyance occurred. 'State law creates and defines the scope of the reversionary or other real property interests affected by the ICC's [Interstate Commerce Commission] action pursuant to Section 208 of the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d).'" Chevy Chase Land Co. of Montgomery Cty. v. United States, 37 Fed. Cl. 545, 565 (1997) (quoting Preseault I, 494 U.S. at 20 (O'Connor, J., concurring) (citing Ruckelshaus v. Monsanto Co., 467 U.S. at 1001)), aff'd, 230 F.3d 1375 (Fed. Cir. 1999), reh'g and reh'g en banc denied (Fed. Cir.), cert. denied, 531 U.S. 957 (2000); see also Whispell Foreign Cars, Inc. v. United States, 97 Fed. Cl. 324, 331 ("Whether an individual has a compensable private property interest is determined by state law."), amended after recons. in part, 100 Fed. Cl. 529 (2011). Moreover, in Ruckelshaus v. Monsanto Co., 467 U.S. at 1001, the Supreme Court stated, "we are mindful of the basic axiom that '"[p]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."'" (quoting Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972))) (omission in original). In Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co., 429 U.S. 363 (1977), the United States Supreme Court stated that, "[u]nder our federal system, property ownership is not governed by a general federal law, but rather by the laws of the several States." Id. at 378; see also Davies Warehouse Co. v. Bowles, 321 U.S. 144, 155 (1944) ("The great body of law in this country which controls acquisition, transmission, and transfer of property, and defines the rights of its owners in relation to the state or to private parties, is found in the statutes and decisions of the state.").The parties do not dispute that Washington law applies to the above-captioned cases.

As indicated above, the Lucier plaintiffs, Beattie plaintiffs, and defendant have cross-moved for partial summary judgment regarding BNSF's interest in the railroad corridor and the scope of the easements BNSF obtained.

**Thurston County's Interest in the Railroad Corridor**

Thurston County received its interest in the railroad corridor from BNSF pursuant to the January 19, 2017 Agreement and accompanying quitclaim deed executed by Thurston County and BNSF. Plaintiffs contend that BNSF's predecessor-in-interest acquired its interest in the railroad corridor through four right of way deeds and through prescriptive easements. Plaintiffs argue that the easements acquired through the four right of way deeds and by prescription were limited to railroad purposes. Defendant does not dispute that the four right of way deeds conveyed to BNSF's predecessor-in-interest easements that were limited to railroad purposes. Defendant, however, asserts that genuine issues of material fact exist as to how BNSF's predecessor-in-interest obtained its interest in the section of the railroad corridor allegedly acquired through prescription.

<u>Right of Way Deeds</u>

Plaintiffs contend the Austin deed, Mann deed, Hunter deed, and Carroll deed conveyed to BNSF's predecessor-in-interest easements limited to railroad purposes in the sections of the railroad corridor that abut the parcels owned by <u>Lucier</u> plaintiffs Kris Allen O'Bannon, Jan Pettigrew,[12] Scott L. and Susan K. Putzier, Keith D. Quentin, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Robert M. and Kathleen L Shaputis, and Skiview Estates Association, and <u>Beattie</u> plaintiff Clinton L. Termini. Plaintiffs assert that, under Washington law, the specific language in the granting clauses and habendum clauses of the four right of way deeds can only be construed to convey easements limited to railroad purposes. According to plaintiffs, the use of the phrase "right of way" in a conveyance involving a railroad establishes that the railroad only acquired an easement under Washington law. Defendant "does not dispute that the underlying source deeds at issue here conveyed easements to the railroad for the principal purpose of operating a railroad."

Under Washington law, when an easement terminates because it is used for a purpose outside of the scope of the grant, "the land is discharged of the burden of the easement and the right to possession reverts to the original landowner . . . ." <u>Roeder Co. v. Burlington N., Inc.</u>, 716 P.2d 855, 859 (Wash.), <u>recons. denied</u> (Wash. 1986) (footnote omitted); <u>see also</u> <u>London v. City of Seattle</u>, 611 P.2d 781, 787 (Wash. 1980). The State of Washington Supreme Court in <u>Morsbach v. Thurston County</u> held that a "'grant of a right of way to a railroad company is the grant of an easement merely, and the fee remains in the grantor.'" <u>Morsbach v. Thurston County</u>, 278 P. 686, 690 (Wash. 1929) (quoting 1 THOMPSON ON REAL PROPERTY § 420); <u>see also</u> <u>Wash. Sec. and Inv. Corp. v. Horse Haven Heights, Inc.</u>, 130 P.3d 880, 883 (Wash. Ct. App.) ("[I]f the right-of-way was granted to the railroad as an easement, then the [plaintiffs] would hold title to the land underlying the

---

[12] As discussed above, <u>Lucier</u> plaintiffs allege BNSF's predecessor-in-interest obtained its interest in the railroad corridor adjacent to the southern part of <u>Lucier</u> plaintiff Jan Pettigrew's parcel through the Hunter deed. <u>Lucier</u> plaintiffs allege that BNSF's predecessor-in-interest obtained its interest in the northern part of <u>Lucier</u> plaintiff Jan Pettigrew's parcel through a prescriptive easement.

right-of-way and the railroad would merely maintain a right of use so long as it continued to operate its railway."), review denied, 149 P.3d 379 (Wash. 2006).

According to the State of Washington Supreme Court, under Washington law, "when construing a deed, the intent of the parties is of paramount importance and the court's duty to ascertain and enforce." Brown v. State, 924 P.2d 908, 911 (Wash.) (en banc), recons. denied (Wash. 1996); see also Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d 16, 25-26 (Wash. 2006); Kitsap Cty. v. Kitsap Rifle & Revolver Club, 337 P.3d 328, 345 (Wash. Ct. App. 2014) ("Our goal is to discover and give effect to the parties' intent as expressed in the deed." (citing Harris v. Ski Park Farms, Inc., 844 P.2d 1006 (Wash.) (en banc), recons. denied (Wash. 1993), cert. denied, 510 U.S. 1047 (1994))), amended on recons. denial (2015), review denied, 352 P.3d 187 (Wash. 2015); Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 277 P.3d 18, 24 (Wash. Ct. App. 2012) (citation omitted); Wash. State Grange v. Brandt, 148 P.3d 1069, 1073 (Wash. Ct. App. 2006) ("Generally, when construing a deed, the intent of the parties is of paramount importance and courts must ascertain and enforce such intent."), review denied, 171 P.3d 1054 (Wash. 2007).

The State of Washington Supreme Court also has concluded that, "[t]he interpretation of an easement is a mixed question of law and fact. What the original parties intended is a question of fact and the legal consequence of that intent is a question of law." Sunnyside Valley Irr. Dist. v. Dickie, 73 P.3d 369, 372 (Wash. 2003) (en banc) (citing Veach v. Culp, 599 P.2d 526, 527 (Wash. 1979)); see also Kitsap Cty. v. Kitsap Rifle & Revolver Club, 337 P.3d at 345. The Sunnyside Valley court also offered standard contract interpretation guidance as applied to deeds, stating:

> The intent of the original parties to an easement is determined from the deed as a whole. Zobrist v. Culp, 627 P.2d 1308[, 1310] ([Wash.] 1981). If the plain language is unambiguous, extrinsic evidence will not be considered. City of Seattle v. Nazarenus, 374 P.2d 1014[, 1019-20] ([Wash.] 1962). If ambiguity exists, extrinsic evidence is allowed to show the intentions of the original parties, the circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' prior conduct or admissions.

Sunnyside Valley Irr. Dist. v. Dickie, 73 P.3d at 372 (other citations omitted); see also City of Seattle v. Nazarenus, 374 P.2d at 1019-20 ("'Where the language is unambiguous, other matters may not be considered; but where the language is ambiguous the court may consider the situation of the property and of the parties, and the surrounding circumstances at the time the instrument was executed, and the practical construction of the instrument given by the parties by their conduct or admissions.'" (quoting 28 C.J.S., EASEMENTS § 26[13])); Hanna v. Margitan, 373 P.3d 300, 307 (Wash. Ct. App. 2016) (quoting Sunnyside Valley Irr. Dist. v. Dickie, 73 P.3d at 372).

---

[13] The current version of the Corpus Juris Secundum on Easements quoted by the State of Washington Supreme Court in City of Seattle v. Nazarenus, 374 P.2d at 1019-20, is at section 64 of the Corpus Juris Secundum on Easements. See 28A C.J.S., EASEMENTS §

The State of Washington Supreme Court, however, has applied the "context rule" to interpretation of railroad deeds. As indicated by the State of Washington Supreme Court in <u>Harris v. Ski Park Farms, Inc.</u> when analyzing deeds that involved the conveyance of land underlying a railroad corridor, "[t]his court has adopted the 'context rule' which succinctly stated is that 'extrinsic evidence is admissible as to the entire circumstances under which [a] contract [is] made, as an aid in ascertaining the parties' intent', specifically adopting the Restatement (Second) of Contracts §§ 212, 214(c) (1981)." <u>Harris v. Ski Park Farms, Inc.</u>, 844 P.2d at 1014 (footnote omitted) (alterations in original); <u>see</u> <u>also</u> <u>Haggart v. United States</u>, 108 Fed. Cl. 70, 78 (2012) ("When faced with railroad deeds, Washington courts have been more accepting of extrinsic evidence, regularly relying on it to interpret the conveyance language, even when no ambiguity is cited." (citing <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n</u>, 126 P.3d at 25 n. 12; and <u>Harris v. Ski Park Farms, Inc.</u>, 844 P.2d at 1014)), <u>recons. denied</u>, 131 Fed. Cl. 628 (2017)[14]; <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines</u>

---

64 (2018) ("Where the language is unambiguous, other matters may not be considered, as an easement specific in its terms is decisive of its limit. However, where the language is ambiguous the court may consider the situation of the property and of the parties, and the surrounding circumstances at the time the instrument was executed, and the practical construction of the instrument given by the parties by their conduct or admissions." (footnotes omitted)).

[14] On December 18, 2012, the court in <u>Haggart</u> issued an opinion regarding liability, which found that "the government is liable for a taking of the property of plaintiffs in Subclass Two and those in Subclass Four, categories A through D." <u>Haggart v. United States</u>, 108 Fed. Cl. at 98. On May 21, 2014, the <u>Haggart</u> court approved a settlement agreement between the parties and directed the Clerk of the Court "to enter judgment in the total amount of $140,541,218.69, consisting of $137,961,218.69 in principal and interest for prevailing class members and $2,580,000 for attorneys' fees and litigation costs awarded pursuant to the Uniform Relocation Act . . . ." <u>Haggart v. United States</u>, 116 Fed. Cl. 131, 149 (2014), <u>vacated</u> <u>sub</u> <u>nom.</u> <u>Haggart v. Woodley</u>, 809 F.3d 1336 (Fed. Cir. 2016), <u>cert. denied</u>, 136 S. Ct. 2509 (2016). Two of the class members in <u>Haggart</u> appealed the court's May 21, 2014 opinion. <u>See</u> <u>Haggart v. Woodley</u>, 809 F.3d 1336 (Fed. Cir.), <u>cert. denied</u>, 136 S. Ct. 2509 (2016). On January 8, 2016, the United States Court of Appeals for the Federal Circuit issued an opinion finding that the United States Court of Federal Claims had improperly failed to provide written information to the <u>Haggart</u> class members that would have enabled class members to comparatively calculate their amounts to be awarded and stating "[w]e reverse the Claims Court's approval of the settlement agreement and award of attorney fees under the common fund doctrine and remand for further consideration consistent with the foregoing. The Claims Court's decision is **VACATED AND REMANDED**." (emphasis in original). <u>Id.</u> at 1359. On remand, the defendant in <u>Haggart</u> moved for reconsideration of the court's December 18, 2012 liability decision. <u>Haggart v. United States</u>, 131 Fed. Cl. 628, 633, <u>recons. denied,</u> 133 Fed. Cl. 568 (2017). On May 4, 2017, the <u>Haggart</u> court issued another opinion, which stated that, "[f]ollowing the remand from the court of appeals, the court initially sought to ensure that all information pertinent to the appraisal process was made available to class members

Ass'n, 126 P.3d at 26 n.15 ("Even absent ambiguity, this court, unlike in statutory or contract construction cases, has consistently examined the circumstances surrounding the transfer and subsequent conduct of the parties, regardless of ambiguity, if helpful in ascertaining the parties' intent, which is of paramount importance." (internal quotation marks and citation omitted)); Brown v. State, 924 P.2d at 912 (Wash. 1996) ("In addition to the language of the deed, we will also look at the circumstances surrounding the deed's execution and the subsequent conduct of the parties."); cf. Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 277 P.3d at 27 (noting that the context rule applies to a "discrete subset of cases interpreting railroad right-of-way interests"). Citing to Brown v. State and Harris v. Ski Park Farms, Inc., the State of Washington Court of Appeals in Roeder Co. v. K & E Moving & Storage Co., Inc., noted that "the Supreme Court has recently ruled that, in light of Washington's adoption of the 'context rule' for contracts, courts may look to extrinsic evidence *along with* the deed itself to determine the parties' intent." Roeder Co. v. K & E Moving & Storage Co., Inc., 4 P.3d 839, 841 n.6 (Wash. Ct. App.) (emphasis in original) (citing Brown v. State, 924 P.2d at 912; and Harris v. Ski Park Farms, Inc., 844 P.2d at 1014), recons. denied, (Wash. Ct. App. 2000), review denied, 16 P.3d 1264 (Wash. 2001). Analyzing the language of deeds involving a conveyance of land underlying a railroad corridor first, but then referring to the context surrounding the execution of the deeds is reasonable, given the age of deeds and the sometimes stilted language employed therein. See Haggart v. United States, 108 Fed. Cl. at 78-79 (citing the undersigned's decision in Longnecker Prop. v. United States, 105 Fed. Cl. 393, 409 (2012)).

With the exception of the names, dates, purchase price, and parcel descriptions, which are not relevant to the court's analysis of the right of way deeds in this case, the four right of way deeds contain very similar relevant language. As described above, each right of way deed is titled as a "Right Of Way Deed" and conveys a strip of land to the Tacoma Olympia and Grays Harbor Railroad Company[15] "for the construction, operation and maintenance of said railroad company's proposed line of railroad on, over, across and through" the land being conveyed. (capitalization in original). Each right of way deed also contains a habendum clause providing that the Tacoma Olympia and Grays Harbor Railroad Company and its successors and assigns are "[t]o Have and to Hold the strip of land . . . so long as the same shall be used for railroad purposes." Under Washington State law, "special significance" is given to the phrase "right of way" in railroad deeds.

---

in written form." Haggart v. United States, 131 Fed. Cl. at 632. The Haggart court also granted plaintiffs' motion to enforce the parties' settlement agreement, which the court approved of in its May 21, 2014 opinion, and denied defendant's motion for reconsideration. Subsequently, the defendant in Haggart moved for reconsideration of the Haggart court's May 4, 2017 opinion, which the court denied on August 17, 2017. See Haggart v. United States, 133 Fed. Cl. 568, 578 (2017).

[15] As discussed above, the ICC valuation map states that the Tacoma Olympia and Grays Harbor Railroad Company conveyed its interest in the railroad corridor to the United Railroads of Washington in 1890. The United Railroads of Washington conveyed its interest to the Northern Pacific Railway Company, BNSF's predecessor-in-interest, in 1898.

See Brown v. State, 924 P.2d at 912. "[W]hen the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title." Swan v. O'Leary, 225 P.2d 199, 201 (Wash. 1950) (en banc); see also Roeder Co. v. Burlington N., Inc., 716 P.2d at 859 (finding a conveyance of a fifty foot wide parcel of land "for all railroad and other right-of-way purposes" to be an easement), recons. denied (Wash. 1986); Hanson Indus., Inc. v. Cty. of Spokane, 58 P.3d 910, 914 (Wash. Ct. App. 2002) ("[A] grant for the purpose of a railroad right-of-way conveys an easement only, absent express language to the contrary."), review denied, 149 Wash.2d 1028 (2003). The Austin, Mann, Hunter, and Carroll deeds' use of the phrase "right of way," the limitation contained in the deeds' habendum clauses, and the lack of express language indicating a contrary intent, therefore, demonstrates the grantors in the Austin, Mann, Hunter, and Carroll deeds only conveyed easements to BNSF's predecessor-in-interest. See Roeder Co. v. Burlington N., Inc., 716 P.2d at 859; see also Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d at 25 ("While the use of the term 'right of way' in the granting clause is not solely determinative of the estate conveyed, it remains highly relevant, especially given the fact that it is used to define the purpose of the grant." (emphasis in original)).

Furthermore, the easements granted in the Austin, Mann, Hunter, and Carroll deeds were "for the construction, operation and maintenance of said railroad company's proposed line of railroad" for "so long as the same shall be used for railroad purposes." The four right of way deeds specifically and clearly expressed an intention to limit the easement being conveyed to an easement for the construction, operation, and maintenance of a railroad line. Accordingly, the Austin, Mann, Hunter, and Carroll deeds conveyed easements for railroad purposes. See Haggart v. United States, 108 Fed. Cl. at 80 (holding, under Washington law, a deed that granted to a railroad company a right of way to construct and operate a railroad "'so long as the same shall be used for railroad purposes'" conveyed an easement limited to railroad purposes (emphasis in original)); Swan v. O'Leary, 225 P.2d at 201 (holding that a deed granting a strip of land "'for the purpose of a Railroad right-of-way'" conveyed an easement "for railroad purposes" (emphasis in original)).

Although the plain language of the four right of way deeds unambiguously granted to BNSF's predecessor-in-interest easements for railroad purposes, Washington law suggests that this court should examine the circumstances surrounding the execution of the deeds and the parties' subsequent conduct. See Harris v. Ski Park Farms, Inc., 844 P.2d at 1014. The parties have not submitted any evidence to this court indicating that the grantors in the four right of way deeds and the Tacoma Olympia and Grays Harbor Railroad Company intended to grant fee title to the land underlying the railroad corridor to BNSF's predecessor-in-interest. The plain language of the Austin, Mann, Hunter, and Carroll deeds establishes that BNSF possessed easements for railroad purposes in the section of the railroad corridor adjacent to Lucier plaintiffs Kris Allen O'Bannon, Jan Pettigrew's southern part of her parcel, Scott L. and Susan K. Putzier, Keith D. Quentin, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Robert M. and Kathleen L. Shaputis, and Skiview Estates Association, and Beattie plaintiff Clinton L. Termini.

Adverse Possession/Prescriptive Easement

Lucier plaintiffs Andrew S. Lucier and Jan Pettigrew[16] and Beattie plaintiffs Thomas E. Beattie and Stephen Upton allege BNSF owned a prescriptive easement limited to railroad purposes in the section of the land underlying the railroad corridor that abutted their parcels, which the ICC valuation map identifies as valuation parcel number 13. Plaintiffs state that "there is no deed or other conveyance document that relates to the segment of the Railroad Line comprised of Valuation Parcel 13," and that the ICC valuation schedule and ICC valuation map indicate that valuation parcel number 13 was "acquired by adverse possession." According to plaintiffs, under Washington law, "where a railroad establishes its line of railroad by use, its gains a prescriptive easement." Lucier plaintiffs assert the prescriptive easement "in this case is based on a claim of right because there is no deed conveying title of the section of the right-of-way corresponding to Andrew Lucier's parcel (Claim 1) and Jan Pettigrew's parcel (Claim 4) as stated in the NARA Valuation Map and Schedules." Beattie plaintiffs also assert that the "prescriptive easement in this case was based 'on a claim of right.'"

Defendant argues a genuine issue of material fact exists as to whether BNSF's predecessor-in-interest, the Northern Pacific Railway Company, acquired the section of the railroad corridor adjacent to parcels owned by Lucier plaintiffs Andrew S. Lucier and Jan Pettigrew and Beattie plaintiffs Thomas E. Beattie and Stephen Upton through adverse possession. In its cross-motion for summary judgment, defendant alleges the parcels "owned by Pettigrew, Lucier, Upton, and Beattie, possess deeds containing references to a deed issued by NP [Northern Pacific Railway Company] in 1903." Defendant submitted to this court a deed executed by the Northern Pacific Railway Company and the North End Lumber Company on October 26, 1903, in which the Northern Pacific Railway Company conveyed a tract of land in section seven of township seventeen, "excepting therefrom" a one-hundred foot wide strip of land measured "from the center line of the main track of the Northern Pacific Railway as the same is now located" and "reserving and excepting" mineral rights in the land for the Northern Pacific Railway Company. According to defendant, the presence of the October 26, 1903 Northern Pacific Railway Company deed in plaintiffs' chain of title raises a genuine issue of material fact as to whether BNSF's predecessor-in-interest acquired that portion of the railroad by adverse possession. Plaintiffs, however, assert that the 1903 Northern Pacific Railway Company deed conveys

> land not just apart from the land at issue in this case but in a completely different section, township and range. All of the railroad corridor at issue in this case is in section 8 while the corridor described in Defendant's Exhibit 3 lies entirely in section 7. Further, this deed does not appear in any of the Plaintiffs' chain of title.

---

[16] Lucier plaintiff Jan Pettigrew argues the railroad corridor abutting the northern part of her parcel was obtained by prescriptive easement.

In the October 26, 1903 deed, the Northern Pacific Railway Company conveyed to the North End Lumber Company 160 acres of land consisting of the "southeast quarter (SE ¼) of Section No. seven (7) in Township seventeen (17) North of Range two (2) West of the Willamette Principal Meridian . . . ." (emphasis added).[17] Defendant's own submissions to the court acknowledge the NITU "only relates to Section 8 and another section, not at issue in this litigation," and that "Thurston County already owns the 12.5 mile stretch of line directly south of the Corridor," which includes the railroad corridor in section seven. Indeed, the February 22, 2017 quitclaim deed entered into by BNSF and Thurston County, which conveyed BNSF's interest in the railroad corridor to Thurston County, conveyed tracts of land in section five and section eight of township seventeen. Additionally, the ICC valuation map also shows valuation parcel number 13 as being within section eight, not section seven. Thus, the October 26, 1903 deed entered into by the Northern Pacific Railway Company and the North End Lumber Company did not convey land to BNSF's predecessor-in-interest in the section of the railroad corridor adjacent to parcels owned by Lucier plaintiffs Andrew S. Lucier and Jan Pettigrew and Beattie plaintiffs Thomas E. Beattie and Stephen Upton.

Nevertheless, a deed dated January 25, 1956, which appears in the chains of title for Lucier plaintiffs Andrew S. Lucier and Jan Pettigrew and Beattie plaintiffs Thomas E. Beattie and Stephen Upton, states "[a]s to SE¼ Section 7: Mineral Reservation made by Northern Pacific Railway Company, in deed dated October 26, 1903 and recorded in Volume and record in Volume 57 of Deeds, page 579." (emphasis added). Earlier deeds in the chains of title for Lucier plaintiffs Andrew S. Lucier and Jan Pettigrew and Beattie plaintiffs Thomas E. Beattie and Stephen Upton, including the January 25, 1956 deed, conveyed land in both section seven and section eight. The deeds conveying parcels to Lucier plaintiffs Andrew S. Lucier and Jan Pettigrew and Beattie plaintiffs Thomas E. Beattie and Stephen Upton, however, only conveyed land in section eight. Although references to a mineral rights reservation for the Northern Pacific Railway Company remain in the deeds that conveyed parcels to Beattie plaintiffs Thomas E. Beattie and Stephen Upton, and the mineral rights reservation for the Northern Pacific Railway Company is referenced in the chains of title for Beattie plaintiffs Thomas E. Beattie and Stephen Upton and Lucier plaintiffs Andrew S. Lucier and Jan Pettigrew, the mineral rights reservation for the Northern Pacific Railway Company is inapplicable to the plaintiffs' parcels as currently defined because their parcels are located solely in section eight, and the mineral reservation applies to land located in section seven.

Furthermore, neither party has submitted a document in which any of BNSF's predecessors-in-interest acquired an interest in the land underlying the section of the railroad corridor located in valuation parcel number 13. The ICC valuation schedule, which the Northern Pacific Railway Company filed with the ICC in 1917, states that there was "[n]o record found" for valuation parcel number 13 and that title was "acquired by adverse possession." The ICC valuation map, which the Northern Pacific Railway Company filed with the ICC in 1917, indicates that title to valuation parcel number 13 was

---

[17] A quarter section of land is 160 acres. See 1 Joyce Palomar, PATTON AND PALOMAR ON LAND TITLES § 148 (3d ed. 2011).

"Acquired by Adverse Possession." (capitalization in original). The absence of an applicable deed and the statements contained in the ICC valuation map and ICC valuation schedule indicate that BNSF's predecessor-in-interest did not obtain its interest in valuation parcel number 13 through a deed, but, rather, by either "adverse possession" or, as plaintiffs assert, through a prescriptive easement.

Washington State law does not appear to address whether a railroad can obtain title to land by adverse possession, and the parties have not cited to any Washington State case law indicating that a railroad can acquire title to land by adverse possession. Additionally, defendant has not asserted that BNSF's predecessor-in-interest obtained its interest in the railroad corridor in valuation parcel number 13 by adverse possession. Rather, defendant asserts that genuine issues of material fact exist as to how valuation parcel number 13 was acquired. Under Washington State law, "[a] railroad is a public highway, created for public purposes." Lawson v. State, 730 P.2d 1308, 1311 (1986) (en banc) (citing Puget Sound Elec. Ry. v. United States, 117 P.3d 739 (Wash. 1911)); see also Reed v. Johnson, 67 P. 381, 385 (Wash. 1901) ("Railroads are for many purposes public highways."). "An easement of right of way across the land of another, including even the establishment of a public highway over private property, may be acquired by prescription." Nw. Cities Gas Co. v. W. Fuel Co., 123 P.2d 771, 775 (Wash. 1942) (en banc) (citations omitted); see also Hornish v. King Cty., 182 F. Supp. 3d 1124, 1130 (W.D. Wash. 2016) (analyzing the interest of a railroad company's successor-in-interest in a railroad corridor as a prescriptive easement when there were no "original deeds delineating the nature of the property interest originally acquired" by the railroad company), appeal docketed, No. 16-35486 (9th Cir. June 10, 2016). Whether a prescriptive easement has been established is a mixed question of fact and law. Lee v. Lozier, 945 P.2d 214, 217 (Wash. Ct. App. 1997) (citing Petersen v. Port of Seattle, 618 P.2d 67 (Wash. 1980)).

Establishing a prescriptive easement requires:

the person claiming the easement must use another person's land for a period of 10 years and show that (1) he or she used the land in an "open" and "notorious" manner, (2) the use was "continuous" or "uninterrupted," (3) the use occurred over "a uniform route," (4) the use was "adverse" to the landowner, and (5) the use occurred "with the knowledge of such owner at a time when he was able in law to assert and enforce his rights."

Gamboa v. Clark, 348 P.3d 1214, 1217 (Wash. 2015) (en banc) (citing Nw. Cities Gas Co. v. W. Fuel Co., 123 P.2d at 775); see also Dunbar v. Heinrich, 622 P.2d 812, 813 (Wash. 1980) (en banc) ("In order to obtain a prescriptive easement, a claimant must prove the following elements: (1) use adverse to the right of the servient owner, (2) open, notorious, continuous, and uninterrupted use for the entire prescriptive period, and (3) knowledge of such use by the owner at a time when he was able to assert and enforce his rights." (citing Mood v. Banchero, 410 P.2d 776 (Wash. 1966); Gray v. McDonald, 283 P.2d 135 (Wash. 1955); and 1 WASH. STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 13.12 (1979))); 810 Props. v. Jump, 170 P.3d 1209, 1216 (Wash. Ct. App. 2007) (citations

omitted); <u>Kunkel v. Fisher</u>, 23 P.3d 1128, 1130 (Wash. Ct. App. 2001). Use of another's land that

> has been open, notorious, continuous, uninterrupted, and for the required time creates a *presumption* that the use was *adverse*, unless otherwise explained, and, in that situation, in order to prevent another's acquisition of an easement by prescription, the burden is upon the owner of the servient estate to rebut the presumption by showing that the use was permissive.

<u>Nw. Cities Gas Co. v. W. Fuel Co.</u>, 123 P.2d at 776 (emphasis in original) (citations omitted); <u>see also</u> <u>Gamboa v. Clark</u>, 348 P.3d at 1218; <u>Williams Place, LLC v. State ex rel. Dep't of Transp.</u>, 348 P.3d 797, 814 (Wash. Ct. App. 2015) (citation omitted). The presumption that the claimant's use was adverse, however, does not apply in situations involving unenclosed land. <u>Gamboa v. Clark</u>, 348 P.3d at 1217 (citation omitted); <u>see also</u> <u>Roediger v. Cullen</u>, 175 P.2d 669, 681 (Wash. 1946) (en banc) ("If it be true that the lands are unclosed, [sic] the presumption is that the use was permissive, and, therefore, that no easement was acquired."); <u>Nw. Cities Gas Co. v. W. Fuel Co.</u>, 123 P.2d at 776. Use of "vacant, open, unclosed, [sic] unimproved lands" does not in "itself give rise to a presumption that the use has been adverse . . . ." <u>Nw. Cities Gas Co. v. W. Fuel Co.</u>, 123 P.2d at 776. Similarly, a prescriptive easement requires "the servient estate knows of, and acquiesces in, such user, or unless the user is so open, notorious, visible, and uninterrupted that knowledge and acquiescence on his part will be presumed." <u>Id.</u> at 776 (citations omitted); <u>see</u> <u>also</u> <u>Nickell v. Southview Homeowners Ass'n</u>, 271 P.3d 973, 978 (Wash. Ct. App. 2012) ("'[I]f the use of another's land is open, notorious and adverse, the law presumes knowledge or notice in so far as the owner is concerned.'" (alteration in original) (quoting <u>Hovila v. Bartek</u>, 292 P.2d 877 (Wash. 1956))), <u>review</u> <u>denied</u>, 282 P.3d 96 (Wash. 2012); <u>Pedersen v. Wash. State Dep't of Transp.</u>, 717 P.2d 773, 777 (Wash. Ct. App. 1986) (citing <u>Nw. Cities Gas Co. v. W. Fuel Co.</u>, 123 P.2d at 776).

Under Washington State law, when an easement is acquired by prescription, "'the extent of the right is fixed and determined by the user in which it originated . . . .'" <u>Nw. Cities Gas Co. v. W. Fuel Co.</u>, 135 P.2d 867, 869 (Wash. 1943) (citing 28 C.J.S., EASEMENTS § 74); <u>see also</u> <u>Haggart v. United States</u>, 108 Fed. Cl. at 81 n.5.; <u>810 Props. v. Jump</u>, 170 P.3d at 1217 ("The extent of the rights acquired through prescriptive use is determined by the uses of the easement." (citing <u>Nw. Cities Gas Co. v. W. Fuel Co.</u>, 135 P.2d at 868-69)). When a prescriptive easement is acquired under a claim of right, Washington State law provides that the prescriptive easement "is established only to the extent necessary to accomplish the purpose for which the easement is claimed." <u>Yakima Valley Canal Co. v. Walker</u>, 455 P.2d 372, 374 (Wash. 1969) (citation omitted); <u>see also</u> <u>810 Props. v. Jump</u>, 170 P.3d at 1217 ("The easement acquired extends only to the uses necessary to accomplish the purpose for which the easement was claimed." (citing <u>Yakima Valley Canal Co. v. Walker</u>, 455 P.2d at 374)); <u>Lee v. Lozier</u>, 945 P.2d at 220. "On the other hand, however, where one's occupancy or adverse user is under color of title that is a matter of public record, possession or user of a portion is regarded as coextensive with the entire tract described in the instrument under which possession is claimed." <u>Yakima Valley Canal Co. v. Walker</u>, 455 P.2d at 374 (citation omitted). A

prescriptive easement is obtained by color of title when "'the adverse claimant holds or traces back to a title document, usually a deed, that appears on its face to convey good title, but that, for some reason that does not appear on its face, did not convey title.'" Campbell v. Reed, 139 P.3d 419, 423 (Wash. Ct. App. 2006) (quoting 17 WILLIAM B. STOEBUCK & JOHN WEAVER, WASHINGTON PRACTICE, REAL ESTATE: PROPERTY LAW § 8.20 (2004)), review denied, 160 Wash.2d 1023 (2007).

In the above-captioned cases, Lucier plaintiffs Andrew S. Lucier and Jan Pettigrew and Beattie plaintiffs Thomas E. Beattie and Stephen Upton own land that abuts the section of the railroad corridor in valuation parcel number 13. Plaintiffs and defendant indicate that the railroad corridor was originally constructed in 1890. The ICC valuation map, which was created in 1917, illustrates that the railroad corridor extends through valuation parcel number 13, which is bordered by valuation parcel number 12 and valuation parcel number 14. The deed identified by the ICC valuation map for valuation parcel number 12, the Mann Deed, conveyed "a right of way as described below feet in width, for the construction, operation and maintenance of said railroad company's proposed line of railroad on, over, across and through the following described tracts or parcels of land . . . ." The deed identified by the ICC valuation map for valuation parcel number 14, the Hunter Deed, conveyed "a right of way One Hundred feet in width, for the construction, operation and maintenance of said railroad company's proposed line of railroad on, over, across and through the following described tracts or parcels of land . . . ." It appears that the railroad corridor located in valuation parcel number 13 was used in conjunction with the railroad "right of way" described in the Mann deed and Hunter deed.

Neither party, however, has submitted any evidence to the court indicating whether BNSF's predecessor-in-interest's use of the railroad corridor in valuation parcel number 13 was adverse to the owners of the land adjacent to the railroad corridor, or whether the owners had knowledge of BNSF's predecessor-in-interest's use. Additionally, it is unclear which, if any, presumption applies to BNSF's predecessor-in-interest's use of the railroad corridor in valuation parcel number 13, as it is unclear from the evidence before the court whether the land in valuation parcel number 13 is unenclosed. See Nw. Cities Gas Co. v. W. Fuel Co., 123 P.2d at 776. Consequently, an issue of genuine fact exists as to how BNSF's predecessor-in-interest acquired its interest in the section of the railroad corridor in valuation parcel number 13.

## Scope of the Easements

The parties also dispute whether the STB's issuance of a NITU authorizing the conversion of the railroad corridor to a recreational trail exceeded the scope of the easements underlying the railroad corridor. Plaintiffs contend "the NITU's authorization of conversion of a railroad line to a recreational trail under the Trails Act causes a taking because trail use is fundamentally different from a railroad purposes easement." To support their argument, plaintiffs list the citations of numerous cases from the United States Court of Appeals for the Federal Circuit, United States Court of Federal Claims, and other courts which, according to plaintiffs, "collectively reject the government's 'railbanking' defense" and "recognized that the conversion to a recreational trail under the

Trails Act causes a taking because it is fundamentally different from a railroad purposes easement . . . ."  Plaintiffs also allege that the possibility of BNSF reactivating rail service on the railroad corridor "does not constitute an authorized perpetuation of the original easement" and argue that railbanking does not constitute the "constructing, operating or maintaining the movement of trains over the rails." Plaintiffs contend the four right of way deeds which conveyed land adjacent to <u>Lucier</u> plaintiffs Kris Allen O'Bannon, the southern part of Jan Pettigrew's parcel, Scott L. Putzier and Susan K. Putzier, Keith D. Quentin, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Robert M. and Kathleen L Shaputis, and Skiview Estates Association and <u>Beattie</u> plaintiff Clinton L. Termini contained habendum clauses that provided a limitation that the railroad could only be used for so long as it was used as railroad purposes, which cannot be read to encompass recreational trail use. According to <u>Beattie</u> plaintiffs, the four right of way deeds are "strikingly similar to particular deeds analyzed in *Longnecker*, 105 Fed. Cl. [393,] 393 [(2012)] where this Court held such deeds conveyed easements limited in scope to railroad purposes."

Defendant, however, asserts that "[u]nder Washington law, public trail use does not exceed the scope of an easement for railroad purposes," and that "public trail use is a permitted incidental use that is not inconsistent with the operation of the railroad." Under the Agreement between BNSF and Thurston County and accompanying quitclaim deed, defendant maintains that BNSF reserved the right to reactivate and restore rail service on the railroad corridor, preserved "any railroad purposes," and provided Thurston County with "BNSF's exclusive easements." Defendant asserts such an arrangement does not interfere with any railroad purposes. Defendant also asserts the undersigned's decisions in <u>Longnecker Property v. United States</u>, 105 Fed. Cl. 393,[18] and <u>Beres v. United States</u>, 104 Fed. Cl. 408 (2012),[19] two rails-to-trails cases occurring in the State of Washington that concluded recreational trail use exceeded the scope of a railroad purposes easement, "need not control" because <u>Longnecker v. United States</u> and <u>Beres v. United States</u> were decided prior to <u>Hornish v. King County</u>, 182 F. Supp. 3d 1124 (W.D. Wash. 2016), <u>appeal docketed</u>, No. 16-35486 (9th Cir. June 10, 2016), and <u>Kaseburg v. Port of Seattle</u>, No. C14-0784 JCC, 2015 WL 6449305 (W.D. Wash. Oct. 23, 2015) (<u>Kaseburg II</u>). Defendant argues that those two federal District Court decisions "provide additional insight into Washington law." According to defendant, "[s]pecifically considering the Trails Act, the district court in *Hornish* held that, because railroads are public highways under Washington law, and because owners of public highway easements retain 'exclusive

---

[18] In <u>Longnecker v. United States</u>, the undersigned stated "[i]n sum, the plain language of the Right of Way Deeds makes it clear that uses other than for railroad purposes, including as a recreational trail, exceed the scope of easements of the Right of Way Deeds under consideration in the *Longnecker* class action." <u>Longnecker Prop. v. United States</u>, 105 Fed. Cl. at 418.

[19] In <u>Beres v. United States</u>, the undersigned stated that, under Washington State law, "the scope of easements of the SLS & E Deeds [which conveyed easements for railroad purposes] was exceeded by the conversion of the railroad easement to trail use." <u>Beres v. United States</u>, 104 Fed. Cl. at 437.

control over uses incidental to their easement[],' public trail use does not exceed the scope of a railroad easement."  (alterations in original).

Under the incidental use doctrine, "'a railroad may use its easement to conduct not only railroad-related activities, but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad.'" Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d at 26 (quoting Danaya C. Wright & Jeffrey M. Hester, Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries, 27 Ecology L.Q. 351, 421 (2000)). The incidental use doctrine permits the holder of a railroad easement to use its easement for railroad activities, as well as any other incidental activities that are not inconsistent with and do not interfere with the operation of a railroad. See Wash. Sec. & Inv. Corp. v. Horse Heaven Heights, Inc., 130 P.3d at 886 (citing Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d at 26).

In Kaseburg II, one of the two cases upon which defendant attempts to rely to distinguish the undersigned's decisions in Longnecker and Beres, BNSF entered into a series of agreements with the defendants in Kaseburg II, the Port of Seattle and King County, to transfer BNSF's interest in an easement underlying a section of a railway line near the eastern shores of Lake Washington pursuant to the Trails Act. Kaseburg v. Port of Seattle, 2015 WL 6449305, at *1. The plaintiffs, who owned land adjacent to the railway line, sought to quiet title and to obtain injunctive relief in light of the defendants' allegedly unlawful expansions of its easement. Id. at *2. The plaintiffs contended that the Port of Seattle and King County did not acquire any interest in the subsurface or aerial rights within the easements conveyed to the Port of Seattle and King County by BNSF. Id. In deciding whether the Port of Seattle and King County acquired any interest in the subsurface or aerial rights, the United States District Court for the Western District of Washington stated:

> As the Court held in its ruling on Defendants' previous motion for partial summary judgment, the Trails Act "preserves" the railroad easements in the corridor while adding an *additional* easement for trail use. This means that the Corridor Easements now include all rights that apply to *both* railroad and trail easements-and these rights may be exercised at present.

Id. at *4 (emphasis in original) (internal citations omitted); see also Kaseburg v. Port of Seattle, No. C14-0784-JCC, 2015 WL 4508790, at *4 (W.D. Wash. July 24, 2015) (Kaseburg I). In Kaseburg I, the previous decision referenced in Kaseburg II, the United States District Court for the Western District of Washington stated:

> the Trails Act *preempts* the operation of this basic principle of property law, and prevents both reversion in the face of discontinuance of use (what would otherwise be abandonment under state law) and allows a new easement holder (the trail sponsor) to add an additional use to the easement that is not a railroad purpose—recreational trail use. This, as

Defendants have explained, is why the operation of the Trails Act effectuated a takings on Plaintiffs' land, for which they received just compensation.

Kaseburg v. Port of Seattle, 2015 WL 4508790, at *6. (emphasis in original).

In Kaseburg II, the United States District Court for the Western District of Washington explained that the newly created trail easement was just as exclusive in use, possession, and control as the railroad easements for the railway corridor. Kaseburg v. Port of Seattle, 2015 WL 6449305, at *5-6. After analyzing the scope of the railroad easements at issue, the United States District Court for the Western District of Washington determined that "the Corridor Easements provide exclusive subsurface, surface, and aerial rights in the corridor for railroad and trail purposes." Id. at *7. The United States District Court for the Western District of Washington also concluded, "the Corridor Easements include the exclusive right to possess and control the corridor for certain incidental uses that are consistent with trail use and the operation of a railroad, although we do not now define what these uses are." Id. at *9. The court reiterated that "the Trails Act creates trail easements whose scope is identical to that of the railroad easements they supplement," and reasoned that because, under Washington law, public highway easements retain exclusive control over uses incidental to their easements, and railroads are public highways under Washington State law, the newly created trail easements also retain exclusive control over incidental uses. Id. at *8 (citing Nw. Supermarkets, Inc. v. Crabtree, 338 P.2d 733 (Wash. 1959)).[20]

In Hornish v. King County, the second case upon which defendant attempts to rely, plaintiffs, who were owners of properties that were adjacent to a railway corridor, brought a quiet title action against the defendant, King County, which had acquired an interest in a railway corridor previously owned by BNSF pursuant to the Trails Act. Hornish v. King Cty., 182 F. Supp. 3d at 1127. "As part of its claimed right to 'incidental uses,'" the defendant sought to exercise the subsurface and aerial rights in the railway corridor that BNSF had previously possessed. Id. at 1129. King County claimed those rights were "co-extensive with the 'railroad easement' rights it asserts were acquired in the quitclaim deed . . . ." Id. After taking judicial notice that BNSF had previously regraded land, built trestles over water, dug culverts, and built signaling equipment in the railway corridor, the United State District Court for the Western District of Washington stated that it "adopts the finding in" Kaseburg II, and stated that:

---

[20] Subsequent to Kaseburg II, the United States District Court for the Western District of Washington granted "King County's motion for summary judgment on all remaining issues" and quieted title in the land at issue in Kaseburg in favor of King County. Kaseburg v. Port of Seattle, No. C14-0784 JCC, 2016 WL 4440959, at *11 (W.D. Wash. Aug. 23, 2016) (Kaseburg III), appeal docketed, (9th Cir. Sept. 23, 2016). Plaintiffs in Kaseburg III appealed the United States District for the Western District of Washington's decision in Kaseburg III on September 23, 2016, and oral argument in that appeal is currently scheduled for June 14, 2018. See Kaseburg v. Port of Seattle, No. 16-35768 (9th Cir. filed Sept. 23, 2016).

> the railroad easement survives, that the [King] County's rights are coextensive with the railroad's and that it [defendant] "is entitled to the exclusive use and possession of the area on, above, and below the surface of the Corridor for railroad purposes and incidental uses permitted by Washington law, including use as a recreational trail."

Id. at 1129-30 (quoting defendant's motion in Hornish v. King County). In the conclusion section of its opinion, the United State District Court for the Western District of Washington stated "King County holds all of BNSF's property rights (besides the trail rights created by the Trails Act); i.e., King County holds a 'railroad easement' and a 'trails easement.'" Id. at 1134.

Hornish v. King County does not, as defendant in the above-captioned case contends, stand for the proposition that "public trail use does not exceed the scope of a railroad easement." Relying primarily on Kaseburg II, the United States District Court for the Western District of Washington in Hornish v. King County concluded that the defendant in that case, King County, held a railroad easement and a trails easement, both of which provided King County with possession of the subsurface and aerial rights in the railroad corridor and the incidental uses related to the two easements. See Hornish v. King Cty., 182 F. Supp. 3d at 1130. Although the meaning of the District Court's statement in Hornish v. King County that King County was "'entitled to the exclusive use and possession of the area on, above, and below the surface of the Corridor for railroad purposes and incidental uses permitted by Washington law, including use as a recreational trail'" is less than clear when read in the context of the entire opinion, the conclusion of the opinion clarifies that King County possessed two easements, one for railroad purposes and one for trail purposes. Id. at 1130, 1134. Moreover, in Kaseburg II, the "finding" of which the District Court in Hornish v. King County "adopts," the United States District Court for the Western District of Washington expressly stated "the Trails Act 'preserves' the railroad easements in the corridor while adding an *additional* easement for trail use." Kaseburg II, 2015 WL 6449305, at *4 (emphasis in original). The argument that Hornish v. King County holds that recreational trail use is a permitted incidental use of a railroad purpose easement is undercut by the conclusion in Hornish v. King County that King County possessed two easements, the acknowledgement in Kaseburg II that trail use is an additional easement created pursuant to the Trails Act, and the explicit statement in Kaseburg I that trail use is not a railroad purpose.

Furthermore, under Washington State law, recreational trail use and railbanking both exceed the scope of a railroad purposes easement. See Haggart v. United States, 108 Fed. Cl. at 81 (finding, under Washington State law, that recreational trail use and railbanking are not railroad purposes) (citing Lawson v. State, 730 P.2d at 1312)); Lawson v. State, 730 P.2d at 1312 ("[C]learly, a hiking and biking trail is not encompassed within a grant of an easement for railroad purposes only."); see also Brown v. State, 924 P.2d at 923 (stating that Washington State eminent domain law permits a railroad company to obtain easements in land for "all that is *necessary* for the railroad to accomplish its public purpose," but that the railroad company could not have "obtained any interest in land for

use as a recreational trail through eminent domain" (emphasis in original)). Washington State law comports with precedent in the United States Court of Appeals for the Federal Circuit, which stated, when speaking of a case arising in California:

> [I]t appears beyond cavil that use of these easements for a recreational trail—for walking, hiking, biking, picnicking, frisbee playing, with newly-added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway—is not the same use made by a railroad, involving tracks, depots, and the running of trains. The different uses create different burdens. In the one case there was an occasional train passing through . . . . In the other, individuals or groups use the property, some passing along the trail, others pausing to engage in activities for short or long periods of time.

Toews v. United States, 376 F.3d at 1376; see also Capreal, Inc. v. United States, 99 Fed. Cl. 133, 145 (2011) (stating the purpose of a railroad and a recreational trail are fundamentally different under Massachusetts law); Farmers Co-op. Co. v. United States, 98 Fed. Cl. 797, 805 (stating, under Kansas law, "'[r]ailroad operations' and 'railroad purposes' seem clearly to be different from recreational trail usage."), recons. denied, 100 Fed. Cl. 579 (2011).

Moreover, contrary to defendant's assertion that recreational trail use is an incidental use of a railroad purposes easement, the activities encompassed in recreational trail use are not incidental to, related to, or consistent with the construction, maintenance, and operation of a railroad corridor. See Wash. Sec. & Inv. Corp. v. Horse Heaven Heights, Inc., 130 P.3d at 886 (stating that, under Washington law, "the incidental use doctrine permits a railroad to use its easement to conduct not only railroad activities, but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad" (internal quotation marks and citation omitted)). Thus, this court concludes that Thurston County's use of the railroad purposes easements it acquired from BNSF as a recreational trail exceeds the scope of the railroad purposes easements granted to BNSF's predecessor-in-interest.

Additionally, defendant asserts that "an issue of fact exists as to whether trail use is already on" Lucier plaintiff Jan Pettigrew's parcel. The plat map of BLA-990614, which contains Lucier plaintiff Jan Pettigrew's parcel, states "*TOGETHER WITH EASEMENTS FOR INGRESS, EGRESS AND UTILITIES AS GRANTED IN THE BASIC TRAIL PERMIT # GB-9800002 FOR THE GATE-BELMORE TRAIL AND EASEMENT RECORDED UNDER AUDITOR'S FILE NO. 3204150.*" (emphasis and capitalization in original). Defendant asserts "[t]o the extent an easement for trail use already exists on Plaintiff's property in the right of way, Plaintiff Pettigrew is barred from claiming that the NITU expands the scope of the railroad's easement and from recovering just compensation here." The three-page document submitted by Mr. Sears, counsel of record for the Lucier plaintiffs, at the May 16, 2018 oral argument, however, indicates that easement number

3204150 does not apply to Lucier plaintiff Jan Pettigrew's parcel.[21] Rather, easement number 3204150 applies to a different parcel located on the opposite side of the section of the railroad corridor that abuts Lucier plaintiff Jan Pettigrew's parcel. Consequently, the reference in the plat map of BLA-990614 to easement number 3204150, which, according to the evidence before the court, does not apply to Lucier plaintiff Jan Pettigrew's parcel, does not create a genuine issue of material fact regarding whether recreational trail use exceeds the scope of the railroad purposes easements formerly possessed by BNSF.

**Plaintiffs' Interest in the Railroad Corridor**

Defendant asserts that all of the plaintiffs in Lucier and Beattie should be dismissed because none of the plaintiffs possess an interest in the land underlying the railroad corridor. Plaintiffs, however, allege that they own the land underlying the railroad corridor in fee. As discussed above, in order to be entitled to compensation for an alleged taking by the government, plaintiffs must possess a cognizable interest in the property that was allegedly taken by the government. See, e.g., Casitas Mun. Water Dist. v. United States, 708 F.3d at 1348.

Centerline Presumption

Defendant asserts that the "Plaintiffs' title instruments show that the Corridor is deliberately and unambiguously excluded from their properties, through specific metes and bounds showing the Corridor as a boundary." Defendant argues that "[a]ny Plaintiffs who [sic] property was originally platted by Large Lot Subdivision 0146 ('LLS-0146') should be dismissed because LLS-0146 expressly excludes the Corridor from the plat." Defendant also contends that the centerline presumption does not apply to Lucier plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association, the three plaintiffs who do not own land located in LLS-0146, because the title instruments conveying property to Lucier plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association contain express metes and bounds and illustrations "listing the Corridor as a boundary line, thus rebutting the centerline presumption." According to defendant, "[t]his is sufficient to rebut the centerline presumption and the Court should therefore grant the United States' motion for summary judgment. It is immaterial, and this Court need not resolve, who presently owns title to the Corridor." Beattie plaintiffs state that "it is the metes and bounds language in the plat [map of LLS-0146] that operated to rebut the centerline presumption" and assert that "the fact that the centerline presumption is rebutted does not decide the matter of ownership of the railroad right of way, for in any chain of title there must be *some* grantor that owns the fee." (emphasis in original). Lucier plaintiffs state that "[p]laintiffs recognize that in this plat [LLS-0146], there is a metes and bounds description showing the legal description of the property. That description rebuts the centerline presumption."

---

[21] As mentioned above, Ms. Izfar, counsel of record for defendant in the above-captioned cases, stated at the May 16, 2018 oral argument that she did not object to the admission of Mr. Sear's three-page document. Ms. Izfar also did not challenge the accuracy of the three-page document submitted by Mr. Sears.

Under Washington State law, generally, "the conveyance of land which is bounded by a railroad right of way will give the grantee title to the center line of the right of way if the grantor owns so far, unless the grantor has expressly reserved the fee to the right of way, or the grantor's intention to not convey the fee is clear." Roeder Co. v. Burlington N., Inc., 716 P.2d at 861 (citing Standard Oil Co. v. Milner, 152 Ala. 104, 110 (1962); Vaughn v. Fitzgerald, 511 P.2d 1148, 1151 (Okla. Ct. App.1973); and 11 C.J.S. BOUNDARIES § 45 (1938)); see also Haggart v. United States, 180 Fed. Cl. at 83 (citing Roeder Co. v. Burlington N., Inc., 716 P.2d at 861). "This rule," referred to by the parties as the centerline presumption, presumes that the grantor intended to convey fee in a right of way "along with and as a part of the conveyance of the abutting land, generally on the theory that the grantor did not intend to retain a narrow strip of land which could be of use only to the owner of the adjoining land." Roeder Co. v. Burlington N., Inc., 716 P.2d at 861 (citing Standard Oil Co. v. Milner, 152 Ala. at 100; and McConiga v. Riches, 40 Wash. App. 532, 539 (Wash. Ct. App. 1985)). "When metes and bounds provisions in a deed describe property that extends up to, but does not include, a railroad right of way, the presumption that abutting property owners take title to the center of the right of way is rebutted." Id.; see also Northlake Marine Works, Inc. v. City of Seattle, 857 P.2d 283, 289 (Wash. Ct. App. 1993) ("This [centerline] presumption is rebuttable, and if metes and bounds provisions in the deed describe property that extends up to but does not include the right of way, the presumption is rebutted."). Additionally, "where a deed describes land as a lot laid out on and designated on a certain plat or survey, the plat becomes as much a part of the deed as if it were copied into it." Cook v. Hensler, 107 P. 178, 180 (Wash. 1910)); see also Haggart v. United States, 108 Fed. Cl. at 84 ("Washington law further dictates that 'the general rule is that reference to a plat or map in a deed of conveyance makes it a part thereof.'" (quoting Cook v. Hensler, 107 P. at 180)); Greenblum v. Gregory, 294 P. 971, 973 (Wash. 1930); Saterlie v. Lineberry, 962 P.2d 863, 864 (Wash. Ct. App. 1998) ("Where a deed references a map of the land conveyed, the map and the deed are to be construed together, and the map becomes, 'in legal effect, a part of the description.'" (quoting Moore v. Clark, 289 P. 520, 523 (Wash. 1930)).

In the above-captioned cases, all of the plaintiffs' deeds, with the exception of Lucier plaintiff Skiview Estates Association, contain legal descriptions referencing short subdivisions or boundary line adjustments. The plat map of SS-2411, which contains the parcels owned by Lucier plaintiff Andrew S. Lucier and Beattie plaintiff Stephen Upton, states in metes and bounds and has an illustration indicating that SS-2411 ends at the edge of the railroad corridor. The plat map of SS-2066, which contains the parcels owned by Lucier plaintiffs Kris Allen O'Bannon, Kenneth T. and Shannon L. Katrina, and Jon Sandberg, states in metes and bounds and has an illustration indicating that SS-2066 ends at the edge of the railroad corridor. The plat map of SS-1966, which contains the parcel owned by Lucier plaintiff Robert M. and Kathleen Shaputis, states in metes and bounds and has an illustration indicating that SS-1966 ends at the edge of the railroad corridor. Similarly, the plat map of SS-1962, which contains the parcels owned by Lucier plaintiff Scott and Susan Putzier and Beattie plaintiff Clinton L. Termini, states in metes and bounds and has an illustration indicating that SS-1962 ends at the edge of the railroad corridor. The plat map of SS-2110, which contains the parcel owned by Beattie plaintiff Thomas E. Beattie, states in metes and bounds and has an illustration indicating that SS-

2110 ends at the edge of the railroad corridor. Moreover, as discussed above, the short subdivisions in which the nine plaintiffs listed above, Lucier plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L Shaputis and Beattie plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton, own parcels that correspond with tracts located in LLS-0146. The plat map of LLS-0146 also states in express metes and bounds and contains three illustrations indicating LLS-0146 ends at the edge of the railroad corridor. Although the plat maps demonstrate that all the plaintiffs' properties abut the railroad corridor, the metes and bounds and illustrations in the plat maps depicting plaintiffs' properties rebut the centerline presumption for Lucier plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L Shaputis and Beattie plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton. See Roeder Co. v. Burlington N., Inc., 716 P.2d at 861.

The plat maps for the three other plaintiffs not owning property in LLS-0146, Lucier plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association, also indicate that the three plaintiffs' properties end at the edge of the railroad corridor. The deed for Lucier plaintiff Jan Pettigrew's parcel indicates that Lucier plaintiff Jan Pettigrew owns "PARCEL A OF BOUNDARY LINE ADJUSTMENT NO. BLA-990614." (emphasis and capitalization in original). The plat map of BLA-990614 contains metes and bounds and an illustration indicating that Parcel A of BLA-990614, Lucier plaintiff Jan Pettigrew's parcel, ends at the edge of the railroad corridor. The deed for Lucier plaintiff Keith D. Quentin indicates that Lucier plaintiff Keith D. Quentin owns "PARCEL AA OF BOUNDARY-LINE ADJUSTMENT BLA-0777 . . . ." (capitalization in original). The legal description and plat map of BLA-0777 contain metes and bounds and an illustration indicating that Lucier plaintiff Keith D. Quentin's parcel ends at the edge of the railroad corridor. Additionally, Lucier plaintiffs submitted a plat map of Lucier plaintiff Skiview Estates Association's parcel that was created in connection with a boundary line adjustment. The plat map of Lucier plaintiff Skiview Estates Association's parcel uses metes and bounds and illustration to indicate that Lucier plaintiff Skiview Estates Association's parcel ends at the edge of the railroad corridor. The metes and bounds and illustrations in the plat maps of the parcels owned by Lucier plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association, therefore, rebut the centerline presumption for Lucier plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association. See Roeder Co. v. Burlington N., Inc., 716 P.2d at 861.

LLS-0146

The deeds of nine of the twelve plaintiffs in the above-captioned cases reference parcels within subdivisions, the plat maps of which indicate that the properties owned by those plaintiffs are located in LLS-0146. The nine plaintiffs owning property located in LLS-0146 are Lucier plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L Shaputis and Beattie plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton. Defendant argues that the plaintiffs who own property corresponding with tracts

of land in LLS-0146 should be dismissed because they have no interest in the railroad corridor. Defendant asserts that plaintiffs have no interest in the railroad corridor "[b]ecause these nine Plaintiffs hold property that was platted per the metes and bounds established by LLS-0146, and because LLS-0146 expressly provides that the Corridor was not part of the plat . . . ." According to defendant, "the words 'B.N. R/W R.R. (NOT IN PLAT)'" on the plat map of LLS-0146 are "clear evidence of the grantor's intent to not convey any right of way." Plaintiffs, however, argue that the phrase "B.N. R/W R.R. (NOT IN PLAT)" "indicates nothing of substance" and "can also be taken to simply be an acknowledgement that the right of way was not meant to be represented on the plat." In support of Lucier plaintiffs' position of ownership of the land underlying the railroad corridor, Lucier plaintiffs attempt to rely on their chains of title to prove ownership, arguing "[p]laintiffs  present evidence that each grantor in the individual chains of title intended to convey the fee interest underlying the railroad easement to its centerline and, conversely, did not intend to retain any interest in that strip of land." Lucier plaintiffs also assert that:

> Not only has each Plaintiff demonstrated a chain of title back to the original grantor to the railroad and beyond to the sovereign, they have each shown that no person or entity exercised any retained dominion over the fee interest in the right of way by treating it with any indicia of owner [sic] whatsoever.

Similarly, Beattie plaintiffs, attempting to rely on their chains of title to prove ownership, argue "[p]laintiffs produce the chains of title for each Plaintiff showing that their ownership rights derive from ancestors in title who owned the land underlying the railroad corridor on the date of the creation of the railroad easement." Lucier and Beattie plaintiffs allege that "the chains of title that are now part of this record are the only conveyances of the fee under the right-of-way."

The parties also dispute the interpretation of State of Washington Supreme Court's decision in Roeder Co. v. Burlington Northern, Inc., 716 P.2d 855, and the application of Roeder Co. v. Burlington Northern, Inc. to the above-captioned cases. Beattie plaintiffs argue that defendant

> merely points to metes and bounds descriptions that, under *Roeder*, rebut the evidentiary presumption that Plaintiffs own to the centerline. However, after the presumption is rebutted, all that occurs is that the scoreboard resets to zero. While the Defendant would like the result to be that the rebuttal of an evidentiary presumption means it automatically wins, such is not the case.

Likewise, Lucier plaintiffs assert:

> The only factor the government here relies upon in its defense is the metes and bounds descriptions in the deeds. If that alone were conclusive of the issue in Washington, the court would not have been interested in the fact

that the abutting property owners presented no evidence. The Plaintiffs in this case have presented considerable evidence of intent.

Defendant, however, argues that plaintiffs'

> interpretation mischaracterizes *Roeder*, where the Supreme Court of Washington expressly held that a metes and bounds description *is* evidence of the grantors' intent to withhold conveyance to the centerline. *Roeder Co. v. Burlington N., Inc.*, 716 P.2d 855, 858 (Wash. 1986). Plaintiffs would have this Court disregard the plain language in the deeds whenever there is no evidence of any grantors' intent to affirmatively convey the right of way. Plaintiffs cannot ignore the legal significance of their own title instruments. Nor can they rectify their error by producing even more chains of title, which, taken together, show that for generations, grantors in Plaintiffs' chains of title have intended not to convey the Corridor.

(emphasis in original).

In Roeder Co. v. Burlington Northern, Inc., the State of Washington Supreme Court indicated that it was analyzing three issues,[22] the third of which was "[d]o abutting property owners become owners to the center line of a railroad right of way when the right of way is abandoned?" Roeder Co. v. Burlington N., Inc., 716 P.2d at 858-59. The State of Washington Supreme Court stated its "CONCLUSION" to the third issue was "[w]hen metes and bounds provisions in a deed describe property that extends up to, but does not include, a railroad right of way, the presumption that abutting property owners take title to the center of the right of way is rebutted." Id. at 861 (capitalization in original). When analyzing whether the plaintiffs in Roeder Co. v. Burlington Northern, Inc. had an interest in the railroad corridor, the State of Washington Supreme Court stated:

> When the deed refers to the grantor's right of way as a boundary without clearly indicating that the side of the right of way is the boundary, it is presumed that the grantor intended to convey title to the center of the right of way. When, however, a deed refers to the right of way as a boundary but also gives a metes and bounds description of the abutting property, the presumption of abutting landowners taking to the center of the right of way is rebutted. A metes and bounds description in a deed to property that abuts a right of way is evidence of the grantor's intent to withhold any interest in the abutting right of way, and such a description rebuts the presumption that the grantee takes title to the center of the right of way.

---

[22] The State of Washington Supreme Court identified the first two issues as being "ISSUE ONE. Did the Improvement Company convey an easement or fee simple title to Bellingham Northern? ISSUE TWO. Is a 'catchall' description of a grantor's land in a deed legally sufficient to convey title to that land?" Roeder Co. v. Burlington N., Inc., 716 P.2d at 858 (capitalization in original).

Id. at 861-62 (footnotes omitted). The State of Washington Supreme Court noted that "[a]ll of the appellants herein, with the exception of the Davises, obtained their abutting property from the" fee owner of the land underlying the railroad corridor, and that "[w]ith one exception, the deeds with which these grantors conveyed abutting property used metes and bounds to describe that property as extending up to the rights of way." Id. at 862 (footnote omitted). Regarding the "one exception" that did not include a metes and bounds description, the State of Washington Supreme Court stated, in a footnote, "[t]hat [one] exception describes the abutting property as 'lying Northerly of the right-of-way'. While not in metes and bounds terms, under the facts herein such a description appears to exclude any interest in the right of way." Id. at 862 n. 27 (citation omitted).[23] The State of Washington Supreme Court concluded that a "boundary falling in the center of the rights of way is inconsistent with the careful metes and bounds descriptions in these deeds." Id. at 862.

The State of Washington Supreme Court also independently analyzed the interest of the Davises, who had not received their interest from the fee owner of the land underlying the railroad corridor and stated:

> Without evidence showing that the owner of abutting property received that property from the fee owner of the right of way property, the railroad presumption is inapplicable. Even in the face of such evidence, other persuasive evidence of the grantor's intent to retain the right of way can rebut the presumption. Specifically, language in a deed that describes the adjoining property as extending up to the edge of the right of way rebuts the presumption that the grantor intended to convey title to the center of the right of way.

Id. at 862-63. The State of Washington Supreme Court concluded that "[t]he trial court did not err in quieting title to the two rights of way in Roeder." Id. at 863.

As discussed above, the parties in the above-captioned cases dispute the interpretation of plat maps of the plaintiffs' properties. "[W]here a deed describes land as a lot laid out on and designated on a certain plat or survey, the plat becomes as much a part of the deed as if it were copied into it." Cook v. Hensler, 107 P. at 180; see also Haggart v. United States, 108 Fed. Cl. at 84; Greenblum v. Gregory, 294 P. at 973; Saterlie v. Lineberry, 962 P.2d at 864. As with the interpretation of deeds, when interpreting a plat map, the intent of the parties who made the plat governs the interpretation of the plat. See Gwinn v. Cleaver, 354 P.2d 913, 915 (Wash. 1960); see also Tsubota v. Gunkel, 364 P.2d 549, 551 (Wash. 1961); Ditty v. Freeman, 347 P.2d 870, 872 (Wash. 1959) (quoting Mueller v. City of Seattle, 8 P.2d 994, 996 (Wash. 1932)); Selby v. Knudson, 890 P.2d 514, 517 (Wash. Ct. App. 1995) ("It is well settled law that the intention of the dedicator controls in construing a plat." (citing Roeder Co. v. Burlington N., Inc., 714 P.2d 1170 (Wash. 1986) (en banc); and Frye v. King Cty., 275 P. 547 (Wash.

---

[23] The State of Washington Supreme Court did not provide the full text of the "one exception" deed in its opinion. See generally Roeder Co. v. Burlington N., Inc., 716 P.2d 855.

1929))). "That intention is to be determined from all the marks and lines appearing on the plat." <u>Roeder Co. v. Burlington N., Inc.</u>, 714 P.2d at 1173 (citation omitted); <u>see</u> <u>also</u> <u>Crystal Ridge Homeowners Ass'n v. City of Bothell</u>, 343 P.3d 746, 750 (Wash. 2015) ("We determine intent from the marks and lines on the plat itself."); <u>Gwinn v. Cleaver</u>, 354 P.2d at 915 ("The platter's intention is gathered from the plat itself." (citing <u>Osborne v. City of Seattle</u>, 100 P. 850 (Wash. 1909)) <u>Frye v. King Cty.</u>, 275 P. at 548 ("[T]his intention must be adduced from the plat itself, where possible, as that furnishes the best evidence thereof."). If, however, a plat is ambiguous, the court may consider extrinsic evidence when determining the intent of the parties.[24]   <u>See</u> <u>Tsubota v. Gunkel</u>, 364 P.2d at 551; <u>Gwinn v. Cleaver</u>, 354 P.2d at 915; <u>Frye v. King Cty.</u>, 275 P. at 548; <u>see</u> <u>also</u> <u>Roeder Co. v. Burlington N., Inc.</u>, 714 P.2d at 1173 ("[W]here the plat is ambiguous, surrounding circumstances may be considered to determine intention." (citations omitted)); <u>Selby v. Knudson</u>, 77 Wash. App. at 194.

The plat map of LLS-0146, which consists of three sheets, on each of which is the phrase "BLACK LAKE ESTATES," was created in 1982 at the request of "TERRY ASBJORNSEN on FOR B.L. ESTATES, G.P." (capitalization in original). As discussed

---

[24] Although, under Washington State law, when a deed references a plat map, the plat map becomes part of the deed, the rules of interpretation governing deeds and plats differ. In <u>Harris v. Ski Park Farms, Inc.</u>, the Supreme Court of Washington, sitting en banc, stated "[t]his court has adopted the 'context rule' which succinctly stated is that 'extrinsic evidence is admissible as to the entire circumstances under which [a] contract [is] made, as an aid in ascertaining the parties' intent', specifically adopting the Restatement (Second) of Contracts §§ 212, 214(c) (1981)." <u>Harris v. Ski Park Farms, Inc.</u>, 844 P.2d at 1014 (footnote omitted) (alterations in original). Regarding the interpretation of plat maps, the Supreme Court of Washington stated that "[w]e determine intent from the marks and lines on the plat itself," but "[i]f the plat is ambiguous as to the dedicator's intent, courts may consider surrounding circumstances, including extrinsic evidence." <u>See</u> <u>Crystal Ridge Homeowners Ass'n v. City of Bothell</u>, 343 P.3d at 750 (citing <u>Rainier View Court Homeowners Ass'n v. Zenker</u>, 238 P.3d 1217 (Wash. Ct. App. 2010)). The rules of interpretation governing deeds and plats, however, both indicate that the court's primary focus should be on ascertaining the intent of the parties. <u>Compare</u> <u>Brown v. State</u>, 924 P.2d at 911 ("[W]hen construing a deed, the intent of the parties is of paramount importance and the court's duty to ascertain and enforce.") <u>with</u> <u>Roeder Co. v. Burlington N., Inc.</u>, 714 P.2d at 1173 ("In construing a plat, the intention of the dedicator controls." (citation omitted)). Citing to cases in which the courts were interpreting plat maps depicting land that was dedicated to ascertain the intent of the dedication, defendant argues "[b]ecause the language contained in the title instruments relating to Plaintiffs' properties is unambiguous, the intent of the grantor 'must be determined from a consideration of the plat [or deed] itself and of the descriptions and dedicatory language contained therein . . . .'" (quoting <u>Frye v. King County</u>, 275 P.2d at 548) (alteration and omission in original). Plaintiffs do not indicate whether the standards for interpreting a railroad deed or the standards for interpreting a plat map should govern the interpretation of the plat maps at issue in this case. As the court's analysis will demonstrate, the court's disposition is unaffected even if rules relevant to the interpretation of railroad deeds, such as the "context rule," were applied to the interpretation of the plat maps in this case.

above, Black Lake Estates, G.P. subsequently conveyed title to land located in LLS-0146 to plaintiffs' predecessors-in-title. The legal description on the first sheet of the plat map of LLS-0146 states that that LLS-1046 extends "ALONG THE EAST LINE OF SAID SECTION 7. 1295.80 FEET, TO THE NORTHERLY LINE OF THE BURLINGTON NORTHERN R. R. RIGHT OF WAY: THENCE . . . ALONG SAID RIGHT OF WAY LINE . . . ." (capitalization in original). Subsequently in the legal description on the plat map of LLS-0146, the legal description states "AND THAT PORTION OF GOVERNMENT LOT 1, SECTION 8, T 17 N., R 2 W, W.M. LYING NORTHWESTERLY OF THE RIGHT OF WAY OF THE BURLINGTON NORTHERN R. R. . . . ." All three sheets of the plat map of LLS-1046 uses metes and bounds that indicate the boundaries of properties adjacent to the railroad corridor end at the edge of the railroad corridor. The three sheets of the plat map of LLS-0146 also all contain illustrations that indicate the tracts of land on LLS-0146 end at the edge of the railroad corridor and indicate that the centerline of the railroad corridor is separate from the boundaries of the abutting properties in LLS-0146. On each of the three sheets of the plat map of LLS-0146, next to the illustration of the centerline of the railroad corridor, appear the words "NOT IN PLAT."

The legal description of LLS-0146, metes and bounds in the plat maps of LLS-0146, the illustrations in the plat map of LLS-0146, and the phrase "NOT IN PLAT" in the plat map of LLS-0146 indicate that the railroad corridor is separate from the abutting properties in LLS-0146, and that the railroad corridor is not included in LLS-0146. The legal description on the plat map of LLS-1046 describes LLS-1046 as extending to the railroad corridor, states that LLS-0146 runs "ALONG" the railroad corridor, and states that LLS-1046 is "LYING NORTHWESTERLY" of the railroad corridor. The metes and bounds and illustrations are consistent with the legal description of LLS-1046 and indicate that the properties in LLS-0146 that abut the railroad corridor only extend up to the edge of the railroad corridor. The phrase "NOT IN PLAT" also indicates that the railroad corridor is not included in LLS-0146, which is consistent with the plain language and markings contained on the plat maps of LLS-1046. Additionally, the plat map of LLS-0146 illustrates the presence of other easements on LLS-0146, including a "DRAINAGE AND UNIMPROVED MUTUAL EASEMENT," a "B.P.A. EASEMENT," a "BONNEVILLE POWER ADM EASEMENT," several "DRAINAGE EASEMENT[S]," several "UNIMPROVED MUTUAL EASEMENT[S]," and several "PRIVATE EASEMENT ROAD[S]." Unlike the properties in LLS-0146 that abut the railroad corridor, the metes and bounds of properties on the plat map of LLS-0146 extend into the easements on the plat map of LLS-0146. That the railroad corridor is not included in LLS-0146 is reinforced by the fact that the metes and bounds of properties in LLS-0146 extend into other easements on the LLS-0146 plat map, but the metes and bounds of the properties adjacent to the railroad corridor extend only up to the edge of the railroad corridor.

The plat maps of the referenced short subdivisions, which are referenced by the plaintiffs' individual deeds and correspond with tracts of land on LLS-0146, indicate that the plaintiffs do not own the land underlying the railroad corridor. None of the plaintiffs' deeds contain language which purports to convey the land underlying the railroad corridor, and the illustrations in the referenced short subdivisions are consistent with the illustrations on the sheets of the plat map of LLS-0146 and indicate that the referenced

short subdivisions end at the edge of the railroad corridor. The plat map of SS-2411, which contains the parcels owned by <u>Lucier</u> plaintiff Andrew S. Lucier and <u>Beattie</u> plaintiff Stephen Upton, states in metes and bounds and has an illustration indicating that the edge of the properties in SS-2411 end at the edge of the railroad corridor. The plat map of SS-2411 also marks where the centerline of the railroad corridor is located and contains an arrow, above which is written "50'," pointing to the edge of the properties and the centerline of the railroad corridor. The plat map of SS-2066, which contains the parcels owned by <u>Lucier</u> plaintiff Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, and Jon Sandberg, states in metes and bounds and has an illustration indicating that the edge of the properties in SS-2066 end at the edge of the railroad corridor. As with the plat map of SS-2411, the plat map of SS-2066 also marks where the centerline of the railroad corridor is located and contains an arrow, above which is written "50'," pointing to the edge of the properties and the centerline of the railroad corridor. Likewise, the plat map of SS-1966, which contains the parcel owned by <u>Lucier</u> plaintiff Robert M. and Kathleen Shaputis, the plat map of SS-1962, which contains the parcels owned by <u>Lucier</u> plaintiff Scott and Susan Putzier and <u>Beattie</u> plaintiff Clinton L. Termini, and the plat map of SS-2110, which contains the parcel owned by <u>Beattie</u> plaintiff Thomas E. Beattie, all contain metes and bounds and illustrations which indicate that the edge of the properties in the plat maps of SS-1966, SS-1962, and SS-2110 end at the edge of the railroad corridor. Each of the plat maps of the subdivisions referenced in the plaintiffs' deeds use metes and bounds that indicate the boundaries of the parcels in the subdivisions extend to the edge of the railroad corridor, which indicates the parties did not intend to convey an interest in the land underlying the railroad. <u>See</u> <u>Roeder Co. v. Burlington N., Inc.</u>, 716 P.2d at 862 ("A metes and bounds description in a deed to property that abuts a right of way is evidence of the grantor's intent to withhold any interest in the abutting right of way . . . ." (citations omitted)). While a metes and bounds description does not definitively establish intent, collectively, the plaintiffs' deeds, the plat maps of the referenced short subdivisions, and the plat map  of LLS-0146 demonstrate that <u>Lucier</u> plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L Shaputis and <u>Beattie</u> plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton do not have an interest in the land underlying the railroad corridor.

Additionally, the chains of title offered by plaintiffs do not create a genuine issue of material fact. Nothing in the chains of title indicates that any of the nine aforementioned plaintiffs own the land underlying the railroad corridor. The deeds in the chains of title that post-date the creation of the plat map of LLS-0146 by Black Lake Estates, G.P. in 1982 for the nine plaintiffs owning land corresponding with tracts in LLS-1046 all describe the land being conveyed as either being in a short subdivision, the plat maps of which reference being located on LLS-0146. The post-1982 deeds in the chains of title for the nine plaintiffs do contain any language indicating that any of the plaintiffs own anything more than the properties described in the plat maps of the short subdivisions discussed above or LLS-0146, which, as stated above, do not include the land underlying the railroad corridor. The court, therefore, grants defendant's motion for summary judgment against <u>Lucier</u> plaintiffs Andrew S. Lucier, Kris Allen O'Bannon, Kenneth T. and Shannon L. Kratina, Jon Sandberg, Scott and Susan Putzier, and Robert M. and Kathleen L

Shaputis and <u>Beattie</u> plaintiffs Thomas E. Beattie, Clinton L. Termini, and Stephen Upton.[25]

"Excepting" Deeds

Plaintiffs contend that <u>Lucier</u> plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association own the land underlying the railroad corridor because "under Washington law, when a railroad easement is excepted from the conveyance of a parcel, the new owner takes the fee interest subject to the easement." Plaintiffs argue that ascertaining the intent of the parties to a deed "requires case-by-case examination of the overall effect of the (1) language of the deed, (2) subsequent behavior of the parties regarding the land, and (3) circumstances at the time of execution." According to plaintiffs, "the fee under the easement allegedly excluded was never conveyed to any third party nor otherwise treated with *indicia* of ownership by any grantor," and the railroad only possessed an easement in the railroad corridor. Plaintiffs, therefore, conclude that the deeds conveying property to <u>Lucier</u> plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association conveyed fee simple in the land underlying the railroad corridor.

Defendant, however, maintains that <u>Lucier</u> plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association do not own the land underlying the railroad corridor because the "excepting" language in those deeds should be given its "plain meaning," which, according to defendant, is to exclude. Defendant states that interpreting the word except or excepting to "mean 'subject to'" is "nonsensical," and, if except is interpreted to mean subject to, the language in the plat map of <u>Lucier</u> plaintiff Jan

---

[25] The court notes that, although the affidavits of Dr. Kilpatrick were struck by the court during the May 16, 2018 oral argument, upon review prior to reaching a decision on the admissibility of the affidavits, the court was not persuaded that the affidavits created a genuine issue of material fact, and, contrary to plaintiffs' position, do not indicate that plaintiffs own the land underlying the railroad corridor. In his affidavits, Dr. Kilpatrick states:

> Greenfield Advisors searched the Thurston County records in person and online for any transactions (either inter vivos or intestate) involving the Grantors in the chains of title following the date of the recording of the deed for each such Grantor.
>
> We reviewed the land described in those transactions.
>
> None of the land described in those transactions concerned or related to the land within the railroad right of way adjacent to the Plaintiffs' properties.

Dr. Kilpatrick's inability to locate transactions involving the land underlying the railroad corridor does not contradict the plain, unambiguous language and markings in the plat maps of the referenced short subdivisions and LLS-0146, which indicate the railroad corridor was not included as part of the plaintiffs' properties.

Pettigrew's parcel would convey the parcel subject to the railroad corridor, "Stone Road, and two large swaths of undefined land." Defendant also states that the language contained in the legal description of <u>Lucier</u> plaintiff Keith D. Quentin's parcel in BLA-0777 uses both the terms "except" and "subject to," which, according to defendant, indicates the grantor intended the words to have different meetings. Regarding the plat map for the parcel owned by <u>Lucier</u> plaintiff Skiview Estates Association, defendant argues that the plat map "plainly shows that the right of way is excluded from the property." Defendant notes that, in the area where Skiview Estates Association's parcel abuts the railroad corridor, the plat map states "FORMER NORTHERN PACIFIC RAILWAY CO. – NOW THURSTON COUNTY PARKS DEPT." (capitalization in original).

As discussed, in construing a deed or a plat map, the parties' intent governs. "The term 'except' is generally meant to exclude the described property." <u>Ray v. King Cty.</u>, 86 P.3d 183, 194 (Wash. Ct. App. 2004). In distinguishing an exception in a deed from a reservation in a deed, the State of Washington Supreme Court has explained that "an exception operates to withdraw some part of the thing granted which otherwise would pass to the grantee under the general description." <u>Duus v. Town of Ephrata</u>, 128 P.2d 510, 511 (Wash. 1942); <u>see also</u> <u>Studebaker v. Beek</u>, 83 Wash. 260, 265 (1915). To support their positions regarding the meaning of "except," plaintiffs and defendant both cite to the State of Washington Supreme Court's decisions in <u>Harris v. Ski Park Farms, Inc.</u> and <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n</u>. In <u>Harris v. Ski Park Farms, Inc.</u>, the State of Washington Supreme Court analyzed whether a grantor, Mr. Winkleman, conveyed fee interest in a railroad right of way to a grantee, Ms. Harris, in a deed dated October 29, 1987. <u>Harris v. Ski Park Farms, Inc.</u>, 844 P.2d at 1008-09. The October 29, 1987 deed between Mr. Winkleman and Ms. Harris conveyed two parcels and, in the description of each parcel, stated "*Excepting there from right of way of the Burlington Northern (Formerly Northern Pacific) Railway Company.*" <u>Id.</u> at 1008-09 (emphasis in original). Subsequent to the parties' execution of the October 29, 1987 deed, Mr. Winkleman transferred his interest in the railroad right of way to a third party, Ski Park Farms, Inc., in a quitclaim deed dated February 24, 1988. <u>Id.</u> at 1009. The State of Washington Supreme Court stated that "[t]he statutory warranty deed dated October 29, 1987, is not ambiguous." <u>Id.</u> at 1015. In a declaration signed by Mr. Winkleman, Mr. Winkleman stated that he "would not have quitclaimed the right of way to Ski Park if it [he] believed the property had already been conveyed to Ms. Harris and that it [he] did not sell any ownership rights to the right of way property to her [Ms. Harris]." <u>Id.</u> at 1010. In reaching its conclusion, the State of Washington Supreme Court stated:

> Subsequent acts of a party to a contract are admissible to assist in ascertaining intent. Winkelman's subsequent quitclaim of the right of way to Ski Park, and its prior sale by real estate contract, is consistent with its intent to convey only an easement to Petitioner Harris.

The State of Washington Supreme Court determined that the exception language in the October 29, 1987 deed reserved to Mr. Winkleman a fee interest in the land underlying railroad right of way, which he subsequently transferred to Ski Park Farms, Inc. <u>Id.</u> at 1014.

In <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n</u>, the State of Washington Supreme Court analyzed a deed executed in 1960 between a mother and a son, in which the mother conveyed by deed property to her son, "specifically excepting the 'right-of-way of the Northern Pacific Railway,' predecessor in interest to BNSF." <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n</u>, 126 P.3d at 19. The State of Washington Supreme Court concluded that "the 1960 deed's exception is ambiguous" because "[w]hile the deed purports to except these lands, it could just as reasonably be interpreted to reference them because of the significant nature of the easements present." <u>Id.</u> at 26 (internal quotation marks and citation omitted). The State of Washington Supreme Court found that the 1960 deed did not reserve any interest in the right of way to the mother and conveyed fee interest to the son. <u>Id.</u> The State of Washington Supreme Court reasoned that "the circumstances of the transfer, one from mother to son, suggest a conveyance of the entire property was intended," and, "unlike in <u>Harris,</u> there is no evidence in the record that Ora Kershaw [the mother] intended to reserve any interest in the property nor that she later attempted to convey that interest."

Although the State of Washington Supreme Court's decisions in <u>Harris v. Ski Park Farms, Inc.</u> and <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n</u> are instructive and provide guidance for interpreting the exceptions in conveyance documents of <u>Lucier</u> plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association, both cases are factually dissimilar and distinguishable from the above-captioned cases. In <u>Harris v. Ski Park Farms, Inc.</u>, the court reviewed the testimony of individuals who were involved with executing the conveyances at issue. In the above-captioned cases, the parties have not submitted the testimony of any of the parties that entered into the deeds which conveyed the parcels currently owned by <u>Lucier</u> plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association. Additionally, <u>Lucier</u> plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association have not asserted that "the circumstances of the transfer, one from mother to son, suggest a conveyance of the entire property was intended," as was the case in <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n</u>, and the deed conveying parcel number 12708230200 to <u>Lucier</u> plaintiff Jan Pettigrew, the deed conveying parcel number 12708220200 to <u>Lucier</u> plaintiff Keith D. Quentin, and the deed conveying parcel number 74590100000 to Skiview Estates Association do not indicate such circumstances existed.

In the above-captioned cases, the Description of Original Parcels in the plat map of BLA-990614, which contains <u>Lucier</u> plaintiff Jan Pettigrew's parcel, states: "*EXCEPTING THEREFROM A 100 FOOT WIDE RIGHT OF WAY OF NORTHERN PACIFIC RAILWAY COMPANY. ALSO EXCEPTING THE SOUTH 30 FEET FOR COUNTY ROAD KNOWN AS STONE ROAD. ALSO EXCEPTING THAT PORTION LYING WESTERLY OF THE NORTHERN PACIFIC RAILWAY COMPANY RIGHT OF WAY.*" (emphasis and capitalization in original). The Description of Adjusted Parcels in BLA-990614 provides the legal description of <u>Lucier</u> plaintiff Jan Pettigrew's parcel, which is described as "*LYING SOUTHEASTERLY OF THE RIGHT OF WAY OF NORTHERN PACIFIC RAILWAY COMPANY RIGHT OF WAY.*" (emphasis and capitalization in original). Consistent with the statement in the legal description that <u>Lucier</u> plaintiff Jan

Pettigrew's parcel is lying southeasterly of the railroad corridor, the plat map of BLA-990614 is stated in metes and bounds and has an illustration indicating that <u>Lucier</u> plaintiff Jan Pettigrew's parcel ends at the edge of the railroad corridor. The plat map of BLA-990614 also is stated in metes and bounds and has an illustration indicating that the other two exceptions in the legal description of BLA-990614, which are Stone Road and the area lying westerly of the railroad corridor, are not included in <u>Lucier</u> plaintiff Jan Pettigrew's parcel. As discussed, although not conclusive evidence, the use of metes and bounds to describe a property "that abuts a right of way is evidence of the grantor's intent to withhold any interest in the abutting right of way . . . ." <u>Roeder Co. v. Burlington N., Inc.</u>, 716 P.2d at 862 (citations omitted). The metes and bounds and illustration indicate that all three exceptions in the legal description of BLA-990614 are not included in <u>Lucier</u> plaintiff Jan Pettigrew's parcel, which indicates that the parties did not intend to convey to Jan Pettigrew fee interest in the three excepted items, subject to an easement. Moreover, that the Description of Original Parcels in BLA-990614 excepted an undefined area of land lying westerly of the railroad corridor without indicating the purpose of that exception or that an easement is present on the westerly lying land also indicates that the parties intended the word "EXCEPTING" to mean excluding. The court, therefore, grants defendant's motion for summary judgment against <u>Lucier</u> plaintiff Jan Pettigrew.

The legal description of <u>Lucier</u> plaintiff Keith D. Quentin's parcel in BLA-0777 provides:

> Government Lot 2 in Section 8, Township 17 North, Range 2 West, W.M. EXCEPTING therefrom the North 620 feet, the West 550.29 feet, and the right of way of the Northern Pacific Railway Company, if any and TOGETHER with that part of the Nelson Barnes Jr. D.L.C. No. 37 in said Township 17 North, Range 2 West, W.M., lying Westerly of said railway right of way. EXCEPTING therefrom the North 620 feet. ALSO TOGETHER with and SUBJECT to an easement for ingress, egress and utilities over, across and under the South 20 feet of the North 640 feet of said Government Lot 2 and Nelson Barnes Jr. D.L.C. No. 37 lying Westerly of said railway right of way; ALSO TOGETHER with and SUBJECT to easements of record.

(capitalization in original). The legal description of <u>Lucier</u> plaintiff Keith D. Quentin's parcel describes the parcel as being in Government Lot 2 in Section 8, Township 17 North, Range 2 West, excepting therefrom the northern 620 feet of Government Lot 2, the western 550.29 feet of Government Lot 2, and the railroad corridor, before indicating that Government Lot 2 is subject to several easements. The plat map of BLA-0777 contains an illustration that indicates where the easements are located on Government Lot 2 and that the parcel owned by <u>Lucier</u> plaintiff Keith D. Quentin in Government Lot 2 ends where the "RAILROAD R/W" begins. (capitalization in original). The plat map also divides Government Lot 2 into two separate parcels, with the western 550.29 feet of Government Lot 2, as described in the third exception in the legal description of BLA-0777, being identified as another parcel that is distinct from <u>Lucier</u> plaintiff Keith D. Quentin's parcel. The plat map of BLA-0777, therefore, indicates that the exceptions contained in the legal

description in BLA-0777 should be interpreted to mean "excluding."[26] Accordingly, the court grants defendant's motion for summary against Lucier plaintiff Keith D. Quentin because Keith D. Quentin does not have an interest in the land underlying the railroad corridor.

The pertinent portion of the exhibit to the statutory warranty deed conveying parcel number 7459890100000 to Lucier plaintiff Skiview Estates Association provides the following legal description: "[t]he Southwest quarter of the Southwest quarter of Section 8, Township 17 North, Range 2 West, W.M., EXCEPT portion lying within Northern Pacific Railway Company right-of-way AND EXCEPT the North 30 feet for county road known as Stone Road." (capitalization in original). The statutory warranty deed also states that the conveyance is "SUBJECT TO covenants, conditions, restrictions, reservations, easements and agreements of record, if any." Plaintiffs also submitted a plat map of Skiview Estates Association's property with a legal description that provides, in part, *"SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 17 NORTH, RANGE 2 WEST, W.M. EXCEPT PORTION LYING WITHIN NORTHERN PACIFIC RAILWAY COMPANY RIGHT OF WAY AND EXCEPT THE NORTH 30 FEET FOR COUNTY ROAD KNOWN AS STONE ROAD (81ST AVE SW) . . . ."* (emphasis and capitalization in original). The plat map of Lucier plaintiff Skiview Estates Association's property is stated in metes and bounds and has an illustration that indicate that Lucier plaintiff Skiview Estates Association's property ends at the edge of the railroad corridor. Additionally, the railroad corridor and Stone Road are illustrated on the plat map of Skiview Estates Association's property as being entirely outside of the plat, and the railroad corridor is labeled as "FORMER NORTHERN PACIFIC RAILWAY CO. – NOW THURSTON COUNTY PARKS DEPT." (capitalization in original). The statutory warranty deed conveying parcel number 7459890100000 to Lucier plaintiff Skiview Estates Association and the plat map of Skiview Estates Association's parcel indicate that the railroad corridor is not within Skiview Estates Association's parcel because the parties to the statutory warranty deed specifically excepted the portion of land underlying the railroad corridor, and the plat map uses metes and bounds and an illustration to indicate the railroad corridor, which is labeled as belonging to Thurston County Parks Department, is not included in Skiview Estate Association's parcel. Accordingly, the court grants defendant's motion for summary judgment against Lucier plaintiff Skiview Estates Association because Skiview Estates Association does not possess an interest in the land underlying the railroad corridor.[27]

---

[26] The court notes that interpreting the word "excepting" to mean "excluding" is consistent with the dictionary definition of the word "except," which is defined as "to leave out or take out; make an exception of; exclude; omit." See Except, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (5th ed. 2016). Interpreting the word "excepting" to mean excluding is also consistent with the general meaning of "excepting" under Washington State law. See Ray v. King Cty., 86 P.3d at 194 ("The term 'except' is generally meant to exclude the described property.").

[27] Additionally, Dr. Kilpatrick's affidavits, which the court struck during the May 16, 2018 oral argument, do not create a genuine issue of material fact on this issue. In his affidavits, Dr. Kilpatrick states that "Greenfield Advisors searched the Thurston County records in

Finally, plaintiffs reliance on <u>Sutton v. United States</u>, 107 Fed. Cl. 436 (2012), a rails-to-trail case arising under California law, is misplaced. Plaintiffs argue "[t]he court in *Sutton v. United States*, granted summary judgment in Plaintiffs [sic] favor upon the same type and degree of evidence provided in this case where the government's defense was the same as it is here." In <u>Sutton v. United States</u>, plaintiffs and defendant disputed whether plaintiffs had an interest in the land underlying a railroad corridor owned by a railroad company that had reached a trail use agreement with a third party. See <u>Sutton v. United States</u>, 107 Fed. Cl. at 441. Both plaintiffs and defendant agreed and argued that the centerline presumption had been rebutted, although the court in <u>Sutton v. United States</u> did not independently analyze whether the centerline presumption was rebutted under California law. <u>Id.</u> The court indicated that the plaintiffs had produced the plaintiffs' chains of title and produced an affidavit of a title examiner, whose expertise "was not questioned," which stated that the title examiner had "researched this property and found no transactions involving the railroad corridor in the records other than plaintiffs' chains of title." <u>Id.</u> Additionally, the court determined "[n]one of the intermediate conveyances in the chains of title show reservation of fee title or other rights in previous owners and grantors when they conveyed the lots that adjoin the railroad easement." <u>Id.</u> at 441-42. The court wrote:

> Plaintiffs rely on a California Court of Appeals case for the proposition that chain of title evidence controls in their circumstances. <u>See</u> <u>Besneatte v. Gourdin</u>, 16 Cal. App. 4th 1277, 21 Cal. Rptr. 2d 82 (1993). In that case, homeowners sued their neighbors to quiet title to an abandoned alley that separated their properties. The court examined chain of title evidence dating to the creation of the alley. Despite metes and bounds language in subsequent deeds indicating that the property ended at the alley, the court found that the original landowner had not intended to retain any ownership interest in the strip of land. <u>Id.</u> at 84 ("[T]he use of metes and bounds is not determinative of the grantor's intent."). Thus, successors-in-title retained fee simple interests in the alley.

> The *Besneatte* case controls an analysis of this group of plaintiffs. Where plaintiffs have produced chain of title evidence showing that their predecessors held fee title to the railroad corridor, and defendant has produced no evidence that the corridor had ever been conveyed to anyone else, plaintiffs have demonstrated a property interest in the corridor; they are entitled to compensation for the Government's placement of a new

person and online for any transactions (either inter vivos or intestate) involving the Grantors in the chains of title following the date of the recording of the deed for each such Grantor," and that none of the land described in those transactions concerned the land within the railroad corridor. The absence of a conveyance of the land underlying the railroad corridor does not contradict the plain language contained in the plaintiffs' deeds and plat maps, which, as discussed above, indicate that <u>Lucier</u> plaintiffs Jan Pettigrew, Keith D. Quentin, and Skiview Estates Association do not own the land underlying the railroad corridor.

easement across their lands. Defendant's arguments to the contrary result from a misplacement of applicable burdens. Plaintiffs have shown that available evidence establishes fee title in the group of thirty claimants whose rights are determined by the language of their deeds.

Id. (footnote omitted). In the above-captioned case, however, unlike the decision in Sutton v. United States, the deeds and plat maps of all of the plaintiffs' properties demonstrate that, under Washington law, the parties did not intend to pass fee interest in the land underlying the railroad corridor to the plaintiffs.[28]

## CONCLUSION

For the reasons articulated above, the court **GRANTS** defendant's motion for summary judgment in Lucier, Case No. 16-865, and Beattie, Case No. 16-893. Lucier plaintiffs' partial motion for summary judgment is **DENIED**. Beattie plaintiffs' partial motion for summary judgment is also **DENIED**. The clerk shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**

---

[28] Furthermore, the only evidence plaintiffs have put forth to prove ownership were the stricken affidavits of Dr. Kilpatrick, in which he stated his firm searched for conveyances involving the land underlying the railroad corridor, but that his firm was unable to locate any such conveyances. The absence of a conveyance involving the land underlying the railroad corridor, however, is not sufficient to prove ownership of the land underlying the railroad corridor when, as was the case here, the deeds and plat maps in the plaintiffs' chains of title indicate that plaintiffs do not own the land underlying the railroad corridor. See BHL Props., LLC v. United States, 135 Fed. Cl. at 229 ("Further, it is Mr. Lee's burden to prove his ownership of the land abutting the railway corridor; it is not the government's burden to disprove it. In short, to defeat the government's motion for summary judgment, Mr. Lee must do more than simply cite the absence of evidence in the record that another individual currently owns the land underlying Highway 11. He must produce evidence sufficient to support his claim that the land at issue belongs to him.").